**Kornel BOTOSAN, Plaintiff,**

v.

**Dorothy H. FITZHUGH, Defendant.**

**No. CIV. 98–0387–R (RBB).**

United States District Court,
S.D. California.

Aug. 3, 1998.

Mark D. Potter, Russell C. Handy, San Diego, CA, for Plaintiff.

Donald Merkin, Thomas F. Olsen, Merkin & Associates, La Jolla, CA, for Defendant.

## ORDER DENYING MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE; AND DENYING MOTION FOR SUMMARY JUDGMENT

RHOADES, District Judge.

### I. Overview

Defendant has filed three motions: a Motion to Dismiss Plaintiff's first cause of action; a Motion to Strike portions of Plaintiff's First Amended Complaint; and a Motion for Summary Judgment. For the reasons stated below, the Court denies the Motion to Dismiss. The Court grants the Motion to Strike in part and denies it in part. The Court denies the Motion for Summary Judgment.

### II. Background[1]

Plaintiff Kornel Botosan has a disability and uses a wheelchair. In September of 1997, Plaintiff went to the Cojita Mexican Food Restaurant. The restaurant is located on land leased from the Dorothy H. Fitzhugh Separate Property Trust. Defendant Dorothy H. Fitzhugh is the trustee of the trust.

Plaintiff alleges that the restaurant fails to accommodate handicapped people. For example, Plaintiff alleges that the restaurant does not provide handicapped parking, wheelchair ramps, or handicapped-accessible restroom accommodations. Plaintiff also alleges that the restaurant does not provide "disabled accessibility signage." (1st Am. Compl.¶ 17(b)).

---

1. The Court takes the following statement of facts from the parties' briefs and the First Amended

Plaintiff sued Fitzhugh. Plaintiff's first cause of action alleges numerous violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiff's other causes of action allege violations of California law.

### III. Discussion

Defendant has now filed three motions: A Motion to Dismiss the ADA claim for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1); a Motion to Strike portions of the First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(f); and a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.

The Court will discuss each motion in turn.

### A. The Motion To Dismiss

Defendant argues that the Court should dismiss the ADA claim because Plaintiff failed to exhaust his administrative remedies before suing.

The ADA prohibits discrimination in public accommodations on the basis of disability. *See* 42 U.S.C. § 12182. The ADA incorporates some of the remedies and procedures of Title VII of the Civil Rights Act of 1964. Specifically, the ADA provides that "[t]he remedies and procedures set forth in section *2000a–3(a)* of [Title VII] are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability ...." 42 U.S.C. § 12188(a)(1) (emphasis added). Section 2000a–3(a), in turn, provides that an aggrieved person can bring "a civil action for preventive relief." 42 U.S.C. § 2000a–3(a).

In ordinary Title VII cases, however, an aggrieved person must sometimes exhaust administrative remedies before suing. Section 2000a–3(c) provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State ... which has a ... law prohibiting such act or practice ..., no civil action may be brought ... before the expiration of thirty days after written notice of

Complaint. The Court expresses no view on the accuracy of those facts.

such alleged act or practice has been given to the appropriate State or local authority ....

42 U.S.C. § 2000a–3(c). Defendant argues that this state administrative exhaustion requirement also applies in ADA cases, and that Plaintiff failed to comply with this requirement. Plaintiff counters by arguing that the ADA does not incorporate Title VII's administrative exhaustion requirement.

■ The Court agrees with Plaintiff. The ADA does not purport to adopt § 2000a–3*(c)*, or § 2000a–3 in its entirety. By its clear, express terms, the ADA adopts only § 2000a–3*(a)*, which says nothing about exhausting administrative remedies. This unambiguous statutory language defeats Defendant's argument. See Continental Cablevision, Inc. v. Poll, 124 F.3d 1044, 1049 (9th Cir.1997) (holding that clear statutory "language must ordinarily be regarded as conclusive").

Moreover, the legislative history of the ADA does not indicate that Congress intended to adopt subsection (c). The "Joint Explanatory Statement of the Committee of Conference" stated that the ADA "specifies that the remedies and procedures of Title VII of the 1964 Civil Rights Act" apply in ADA cases. See H.R. Conf. Rep. No. 101–596, at 80 (1990). Although one could read this statement as claiming that the ADA incorporates all the procedures of Title VII cases, the statement does not explicitly say that the ADA adopts *all* such procedures. Also, during a floor debate, Senator Harkin stated that the ADA only imposes an administrative exhaustion requirement in employment contexts. See 135 Cong. Rec. 10734–02, 10759–60 (1989).[2]

In addition, Congress obviously knew how to adopt provisions of Title VII because it expressly adopted subsection (a). It seems unlikely that Congress would absentmindedly forget to adopt a provision that appears a mere two paragraphs below the subsection it adopted. See Bercovitch v. Baldwin Sch., 964 F.Supp. 597, 605 (D.P.R.1997) (holding that because "Congress specifically referred to [subsection (a)] when outlining the available remedies under [the ADA], ... had it

wanted to adopt [subsection (c)], it would have explicitly done so"), rev'd on other grounds, 133 F.3d 141 (1st Cir.1998); see also Sperling v. Hoffmann–La Roche, Inc., 24 F.3d 463, 470 (3d Cir.1994) (holding that "incorporation of selected provisions into [a statute] indicates that Congress deliberately left out those provisions not incorporated"); cf. Jablon v. Dean Witter & Co., 614 F.2d 677, 681 (9th Cir.1980) (finding it "highly improbable that Congress absentmindedly forgot to mention an intended [remedy]" when Congress expressly provided for other remedies within a statutory scheme) (internal quotation marks and citation omitted).

Case law confirms the above analysis. See Bercovitch, 964 F.Supp. at 605 (holding that because the ADA's express terms only adopt subsection (a), the ADA does not adopt subsection (c)); Doukas v. Metropolitan Life Ins. Co., No. CIV–4–478–SD, 1997 WL 833134, at *3 (D.N.H. Oct. 21, 1997) (holding that "[r]eading Congress's designation of 2000a–3(a) to include the other paragraphs of section 2000a–3 would render the designation of paragraph (a) superfluous"); Soignier v. American Bd. of Plastic Surgery, No. 95–C–2736, 1996 WL 6553, at *1 (N.D.Ill. Jan. 8, 1996) (holding that because Congress expressly adopted only subsection (a), it did not intend to adopt subsection (c)), aff'd, 92 F.3d 547 (7th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 771, 136 L.Ed.2d 716 (1997).

Three cases, however, have held to the contrary. Daigle v. Friendly Ice Cream Corp., 957 F.Supp. 8, 9–10 (D.N.H.1997) and Howard v. Cherry Hills Cutters, Inc., 935 F.Supp. 1148, 1149–50 (D.Colo.1996) reached the contrary conclusion without any analysis. The Court declines to follow these cases precisely because they engaged in no analysis.

Mayes v. Allison, 983 F.Supp. 923 (D.Nev. 1997) also held that the ADA imposes an administrative exhaustion requirement. Mayes reached this holding because Mayes found the statutory language to be unclear. Mayes found the language to be unclear "primarily because the ... courts [that] have addressed the issue are ... split on its resolution." Id. at 925. As discussed above,

---

2. Admittedly, Senator Harkin seems to have addressed his remarks to the issue of whether the

ADA would require exhaustion of *federal* administrative remedies.

however, the two other cases that found an administrative exhaustion requirement did so without any analysis. Moreover, despite any split in authority, the Court fails to see how the statutory language is unclear.

Accordingly, the Court holds that the ADA does not incorporate § 2000a–3(c). Plaintiff therefore did not have to exhaust any administrative remedies. The Court denies Defendant's Motion to Dismiss.

## B. The Motion To Strike

■ Defendant has also filed a Motion to Strike portions of Plaintiff's First Amended Complaint. Federal Rule of Civil Procedure 12(f) provides that a court may strike from a pleading any "immaterial" or "impertinent" matter. On a motion to strike, the Court must construe all allegations in the light most favorable to Plaintiff. *See California v. United States*, 512 F.Supp. 36, 39 (N.D.Cal. 1981).

Defendant asks the Court to strike (1) a conspiracy allegation; (2) a request for compensatory damages under the ADA; (3) a request for "daily damages"; (4) a request for damages under California Health and Safety Code § 19955 *et seq.*; (5) a request for punitive damages under California Civil Code §§ 51, 51.5, and 54; and (6) a request for special damages.

### 1. The Conspiracy Allegation

■ The First Amended Complaint alleges that Defendant and fifty unknown people "conspired to commit the acts described [in the complaint]." (1st Am. Compl ¶ 9.) Defendant asks the Court to strike the conspiracy allegation on the basis that Plaintiff has failed to allege any overt acts in furtherance of the conspiracy. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989) (holding that conspiracy allegations must be pleaded with particularity).

This argument is baseless. Besides alleging that Defendant kept the property in a state that did not comply with the law, Plaintiff also alleges that there were "construction alterations carried out by Defendants ...." (1st Am.Compl.¶ 19.) Plaintiff has not failed to allege overt acts.

### 2. Compensatory Damages Under The ADA

■ Defendant also asks the Court to strike Plaintiff's claim to compensatory damages under the ADA, arguing that the ADA does not authorize compensatory damages. *See Darby v. City of Torrance*, 810 F.Supp. 271, 272–73 (C.D.Cal.1992) (holding that improper prayers for relief may be stricken under Rule 12(f)), *rev'd on other grounds*, 46 F.3d 1140 (9th Cir.1995). Plaintiff admits that such damages are not recoverable. *See* 42 U.S.C. § 2000a–3(a) (authorizing only actions for injunctive relief); *Boemio v. Love's Restaurant*, 954 F.Supp. 204, 207 (S.D.Cal. 1997) (holding that monetary damages are not available under the ADA). Accordingly, the Court strikes the portion of Plaintiff's complaint that seeks compensatory damages under the ADA.

### 3. Daily Damages

■ Defendant also asks the Court to strike the portion of Plaintiff's complaint that seeks daily damages in the amount of $1000 per day. Plaintiff basis his request on California Civil Code §§ 52 and 54.3. Those statutes provide that a disabled person may recover "actual damages" in an amount not to exceed $1000 for each act of discrimination the person experiences. *See* Cal. Civ.Code §§ 52, 54.3. Defendant argues that because Plaintiff only went to the Cojita restaurant once, he only suffered actual damages on one day, and therefore cannot recover daily damages for every day since he visited the restaurant.

Plaintiff's complaint, however, contains broader allegations. Plaintiff alleges that he "*is* being subjected to discrimination" because "Plaintiff cannot return to or make use of the [Cojita restaurant]." (1st Am. Compl. ¶ 31 (emphasis added)). Read in the light most favorable to Plaintiff, this means that Plaintiff has been deterred from going to the Cojita restaurant on a daily basis.

This deterrence alone suffices to lay claim to actual damages:

§ 54.3 and § 52 ... extend[ ] to claims based on incidents of deterrence.... [W]here a plaintiff can prove that violation of applicable California disability access

standards deterred [him] on a particular occasion from attempting to attend a place of public accommodation, that plaintiff states a claim for ... damages under § 54.3 and § 52.

*Arnold v. United Artists Theatre Cir., Inc.,* 866 F.Supp. 433, 439 (N.D.Cal.1994). Accordingly, the Court cannot strike Plaintiff's claim to daily damages.

### 4. Damages Under California Health And Safety Code § 19955 *et seq.*

■ Defendant next asks the Court to strike Plaintiff's prayer for damages under California Health and Safety Code § 19955 *et seq.* Section 19955 *et seq.* authorizes a disabled person to bring an action for injunctive relief if the person is denied equal access. *See Donald v. Cafe Royale, Inc.,* 218 Cal. App.3d 168, 183, 266 Cal.Rptr. 804 (1990)

■ In *Donald,* the California Court of Appeal held that § 19955 *et seq.* does not authorize an action for damages. The court held that damages lie only under § 54.3 (discussed above). The court stated: "[S]ection 19955 *et seq....* do[es] not provide a cause of action for damages independent of section 54 *et seq.* to a physically disabled individual denied access." *Id.* at 182–83, 266 Cal.Rptr. 804 (emphasis removed). This language clearly means that damages lie only under § 54.3.

Plaintiff argues, however, that this language means that as long as he couples his cause of action under § 19955 with a cause of action under § 54.3, he can seek damages under § 19955. Plaintiff is simply wrong. *Donald* merely held that § 19955 does not authorize damages; to receive damages, a plaintiff must sue under § 54.3.

Accordingly, the Court strikes the portion of the complaint that seeks damages under § 19955. Plaintiff may, of course, seek damages under § 54.3.

### 5. Punitive Damages

■ Plaintiff also seeks punitive damages under California Civil Code §§ 52(a) and 54.3(a). Both statutes are part of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* Section 52(a) authorizes damages for violations of § 51 or § 51.5, which prohibit discrimination on the basis of dis-

ability. Likewise, § 54.3(a) authorizes damages for violations of § 54 or § 54.1, which also prohibit discrimination on the basis of disability. Defendant argues that neither § 52(a) nor § 54.3(a) authorizes punitive damages. Defendant is incorrect.

Both statutes provide that a person who discriminates against a disabled person may be liable "for the actual damages *and any amount as may be determined by a jury* ... up to a maximum of three times the amount of actual damage[s] ... and ... attorney's fees ...." Cal. Civ.Code §§ 52(a), 54.3(a) (emphasis added). The phrase "any amount as may be determined by a jury" refers to punitive damages. *See Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1172, 278 Cal.Rptr. 614, 805 P.2d 873 (1991) (stating that "the damages provision [in § 52(a) ] allowing for an exemplary award of up to treble the actual damages suffered ... reveals a desire to punish intentional and morally offensive conduct"); *id.* (contrasting § 52(a) with Title VII because Title VII "does not allow recovery of ... punitive damages").

■ Plaintiff argues, however, that despite the statutory cap on punitive damages, he can seek unlimited punitive damages under California Civil Code § 3294, which provides for punitive damages for malice, fraud, or oppression. *See* Cal. Civ.Code § 3294. Plaintiff argues that he can invoke § 3294 because § 52(e) provides that "[a]ctions under this section shall be independent of any other remedies or procedures that may be available to an aggrieved party." Cal. Civ. Code § 52(e). Plaintiff also relies on § 54.3(b), which provides that "[t]he remedies in this section are nonexclusive and are in addition to any other remedy provided by law ...." Cal. Civ.Code § 54.3(b). Plaintiff argues that § 3294 is an "other remedy" that §§ 52(e) and 54.3(b) allow him to invoke.

The Court is unpersuaded. As to § 54.3(b), it merely permits plaintiffs to pursue other avenues of relief. This is made clear by the fact that § 54.3(b) specifically states that because the remedies § 54.3(a) provides are not exclusive, § 54.3(a) does not prohibit "any action for injunctive or other equitable relief ...." Cal. Civ.Code

§ 54.3(b). Section 54.3(b) simply does not permit potentially unlimited monetary liability. This is obvious from § 54.3(a)'s express cap on damages.

Turning to § 52(e), one finds that it does not specifically refer to "injunctive or equitable relief," as § 54(b) does. Nevertheless, the Court cannot ascribe a different meaning to § 52(e), given that the two statutes serve similar purposes, are part of the same statutory scheme, and contain almost identical language in other relevant respects.

Accordingly, Plaintiff may seek punitive damages, but only as expressly authorized by §§ 52(a) and 54.3(a).

## 6. Special Damages

■ Defendant also moves to strike Plaintiff's claim to special damages. Special damages must be pleaded with particularity. *See* Fed.R.Civ.P. 9(g); *Security–First Nat'l Bank v. Lutz,* 322 F.2d 348, 352 (9th Cir. 1963). Defendant claims that Plaintiff has failed to allege any special damages.

■ The Court disagrees. "Special damages are those elements of damages that are the natural, but not the necessary, consequence of a defendant's conduct." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1310 (1990). In an appropriate case, damages for emotional distress can constitute special damages. *See Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1226 (7th Cir.1995) (suggesting that "emotional distress is a sufficiently unusual concomitant of wrongful discharge to [constitute special damages]"); *Rannels v. S.E. Nichols, Inc.,* 591 F.2d 242, 247 (3d Cir.1979) (holding that "pain, humiliation and embarrassment" constitute special damages in defamation cases). In addition, attorney's fees are an item of special damages that must be specifically sought in the complaint. *See United Indus., Inc. v. Simon–Hartley, Ltd.,* 91 F.3d 762, 764–65 (5th Cir.1996).

■ Here, Plaintiff has explicitly claimed attorney's fees. (*See* 1st Am. Compl. ¶¶ 27, 30.) In addition, Plaintiff alleges that because the restaurant had architectural barriers, he "was humiliated, embarrassed and frustrated, suffering serious emotional and physical injuries." (1st Am.Compl.¶ 16.) The Court cannot hold that "serious emotional

and physical injuries" necessarily stem from encountering architectural barriers in a restaurant. These items therefore constitute special damages.

In short, Plaintiff has adequately alleged special damages. The Court will not strike his claim to them.

## C. The Motion For Summary Judgment

■ Defendant next moves for summary judgment on all of Plaintiff's claims. Defendant argues that the lease allocated responsibility for complying with the law to the tenant. Thus, Defendant argues, she had no responsibility and therefore has no liability.

Defendant relies on paragraph 2.02 of the lease, which provides: "Tenant shall abide by all laws and ordinances pertaining to the use of the Premises." (Pl.'s Mot. Summ. J. Ex. 1 ¶ 2.02.) Defendant also relies on paragraph 9.02, which provides: "Tenant shall . . . keep and maintain . . . the Premises . . . in compliance with all laws and regulations . . . ." (*Id.* ¶ 9.02 .) Defendant argues that these provisions gave the tenant exclusive responsibility for the condition of the premises.

The Court disagrees. The lease expressly gave Defendant substantial control over the property. Paragraph 10.01 provides: "Tenant shall not make . . . any structural changes, alterations or additions to the Premises . . . . without . . . obtaining the written consent of [Defendant]." (*Id.* ¶ 10.01.) The lease further provides that even the design and quality of changes "shall be subject to the approval of [Defendant]." (*Id.* ¶ 10.03.) The lease also provides that the tenant could not erect signs without the approval of Defendant. (*See id.* ¶ 16.01.) Obviously then, the tenant did not have sole control over the property, and could not have brought the property into compliance without the cooperation of Defendant. The Court therefore cannot hold that the lease gave sole responsibility for compliance to the tenant.

■ Moreover, even if the lease allocated all responsibility to the tenant, that would not insulate Defendant from liability under the ADA. Under the ADA, liability attaches to landlords and tenants alike. *See*

42 U.S.C. § 12182(a) (providing that the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation"); 28 C.F.R. § 36.201(b) (providing that "[b]oth the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are" [subject to the ADA]).

Nevertheless, 28 C.F.R. § 36.201(b) provides: "As between the parties, allocation of responsibility for complying with the [ADA] may be determined by lease or other contract." 28 C.F.R. § 36.201(b). Defendant argues that this principle means that it can insulate itself from liability by contract.

The Court disagrees. Although very little authority exists on this subject, it appears that a contract assigning responsibility for compliance to one party does not insulate the other party from liability. *See* Paul V. Sullivan, Note, *The Americans with Disabilities Act of 1990*, 29 Suffolk U.L.Rev. 1117, 1127 (1995) (stating that "[n]o matter how landlords and tenants divide the requirements of [ADA] compliance, ... both parties remain subject to liability"); Gabreille P. Whelan, Comment, *The "Public Access" Provisions of Title III of the Americans with Disabilities Act*, 34 Santa Clara L.Rev. 215, 217–18 (1993) (stating that "[t]he landlord and tenant can contract the responsibility for compliance .... [but] the obligated party's failure to comply does not insulate the other party's noncompliance"); *id.* (stating that "[a]lthough both landlord and tenant ultimately bear responsibility for meeting the ADA's public access requirements, the lease ... may determine who will undertake needed changes").

Moreover, § 36.201(b) only provides that the landlord and tenant may allocate responsibility "[a]s between the parties." Section 36 .201(b) does not provide that one party may insulate itself from liability from a *third* party. *See* Office on the ADA, United States Department of Justice, *The Americans with Disabilities Act Title III Technical Assistance Manual* 3 (1992) [hereinafter *DOJ Manual*] (stating that "any allocation made in a lease ... is only effective as between the parties, and both landlord and tenant remain fully liable"); Sullivan, *supra,* at 1127 (stating that "[n]o matter how landlords and ten-

ants divide the requirements of [ADA] compliance, that division of responsibility for compliance applies only in disputes between the landlord and tenant"); Whelan, *supra,* at 218 (stating that "[a]llocation is only effective between parties"). Thus, at most, § 36.201(b) seems to allow only for indemnification in the event that one party has to make changes that the other party should have undertaken.

This approach makes sense as a matter of policy.

> A customer should not have to obtain a copy of the lease and other contracts in order to determine who is the proper defendant. The customer should be able to bring an action, and let the tenant and landlord fight among themselves over who is responsible to pay for any required improvements. From an enforcement standpoint, making the landlord liable for the tenant's violations effectively enlists the landlord's help in monitoring compliance on its premises ....

*Independent Living Resources v. Oregon Arena Corp.,* 982 F.Supp. 698, 768 (D.Or. 1997), *supplemented,* 1 F.Supp.2d 1159 (D.Or.1998).

Defendant argues, however, that the landlord can only be liable for violations in common areas of the property. Defendant argues that the tenant is responsible for violations that occur in the space that the tenant exclusively rents. Defendant argues that because the tenant in this case leased the entire premises, Defendant cannot be liable for any violation on the property.

The Court rejects Defendant's argument. Defendant's argument flies in the face of the Department of Justice's interpretation of § 36.201(b). The Department of Justice has propounded the following example:

> ... ABC Company leases space in a shopping center it owns to XYZ Boutique. In their lease, the parties have allocated to XYZ Boutique the responsibility for complying with the barrier removal requirements of [the ADA] within that store. In this situation, if XYZ Boutique fails to remove barriers, both ABC Company (the landlord) and XYZ Boutique (the tenant) would be liable for violating the ADA and

could be sued by an XYZ customer. Of course, in the lease, ABC could require XYZ to indemnify it against all losses caused by XYZ's failure to comply with its obligations under the lease, but again, such matters would be between the parties and would not affect their liability under the ADA.

*DOJ Manual, supra,* at 3.

The Department of Justice's pronouncement dooms Defendant's argument. In the example, the landlord was liable for violations in the tenant's exclusive area. Moreover, the example makes clear that any allocation of responsibility is effective only between the tenant and landlord.

The little case law that exists on this subject confirms the above analysis. In *Independent Living Resources v. Oregon Arena Corp.,* 982 F.Supp. 698 (D.Or.1997), the court quoted the example that the Department of Justice has propounded, and stated:

If this court were writing on a clean slate, it might well limit the landlord's liability to common areas. However, [the Department of Justice] has adopted a different policy, and its interpretation of 28 C.F.R. § 36.201(b) is consistent with the language of that regulation and therefore is entitled to deference.

*Id.* at 768.

Accordingly, the Court holds that a landlord cannot contract away its liability for ADA violations in areas of the premises that a tenant leases. The Court also holds that any allocation of responsibility for compliance is only effective between the parties. For these reasons, the Court denies Defendant's Motion for Summary Judgment.

## IV. Conclusion

For the reasons stated above, the Court denies Defendant's Motion to Dismiss. The Court grants Defendant's Motion to Strike in part and denies it in part. The Court denies Defendant's Motion for Summary Judgment.

IT IS SO ORDERED: