Roger A. LONG; Ronald Ray Smith; and Disabled Rights Action Committee, a Utah nonprofit corporation, Plaintiffs,

v.

COAST RESORTS, INC.,
et al., Defendants.

No. CV–S–97–1570–RLH.

United States District Court,
D. Nevada.

Dec. 31, 1998.

As Amended Jan. 7, 1999.

Richard F. Armknecht, II, Las Vegas NV or Salt Lake City, UT, for Plaintiffs.

Barry Lieberman, Las Vegas, NV, for Defendants.

## ORDER AND JUDGMENT

HUNT, United States Magistrate Judge.

This matter having been submitted to the undersigned, pursuant to 28 U.S.C. § 636(c), for adjudication, the Court addresses opposing dispositive motions.

Plaintiffs filed their **Motion for Partial Summary Judgment** (# 15) on August 31, 1998. Defendants' Response (# 21) was filed September 29, 1998. Plaintiffs' Reply (# 23) was filed October 13, 1998.

**Defendants' Motion for Summary Judgment** (# 16) was filed August 31, 1998. Plaintiffs' Opposition (# 20) was filed September 29, 1998. Defendants' Reply (# 22) was filed October 13, 1998.

The parties appear to concur, at least on the issues presented, that the matter is ripe for summary consideration pursuant to Rule 56, Fed.R.Civ.P. In fact, a Stipulation of Facts was executed on August 28, 1998, shortly before the filing of these motions, and a rendition was provided by each party. That stipulation adequately complies with Local Rule LR 56–1 and will provide the necessary findings of fact upon which the following decision is based. The contents of that Stipulation of Facts will be provided below.

## BACKGROUND

This action is based upon allegations of structural violations of Title III of the Americans with Disabilities Act (42 U.S.C. § 12181, et seq.) (hereafter "ADA"), by authority of which Plaintiffs seek injunctive and declaratory relief, and also upon allegations of violations of NRS 651.070 and 651.090 (provisions of Nevada's version of the ADA) which also provide for damages. Plaintiffs, in the present motion, do not seek an adjudication of the amount of damages. Rather, they seek to establish Defendants' liability for damages.

The plaintiffs consist of Roger A. Long and Ronald Ray Smith, residents of southern Nevada who require a wheelchair for mobility, and the Disabled Rights Action Committee, (hereafter "DRAC") a Utah nonprofit corporation whose membership includes residents of Nevada and including, apparently, Plaintiffs Long and Smith.

The Coast Hotels and Casinos, Inc. does business as "The Orleans Hotel and Casino" (hereafter "The Orleans") in Las Vegas, Nevada, and provides various public accommodations.

The allegations of the original complaint and the amended complaint arise out of conditions observed by Plaintiffs Long and Smith at The Orleans in October and November 1997. There were originally nine violations identified in Plaintiffs' motion. However, four of those have been rectified, leaving five remaining areas of disagreement as to compliance. The allegations of liability for damages appear to include all originally alleged violations.

The four conditions which have been resolved are as follows:

 a. Defendants' operation of two inaccessible 24–passenger shuttle buses, on a fixed route between the Barbary Coast and The Orleans.

 b. Ramps by the pool without handrails on both sides.

 c. Lack of wheelchair access, for performers or disabled members of the public, for the performance stage of the Bourbon Street Cabaret.

 d. Lack of signage at pay telephones indicating the nearest bank of telephones with a TDD (Telecommunications Device for the Deaf).

The five remaining areas, still in dispute, are as follows:

1. The 819 standard hotel rooms have doorways within the bathrooms, between the sink and the tub and toilet, which are 28 inches, rather than 32 inches, wide.

2. Having three of nine pool side cabanas without wheelchair accessibility.

3. Continued operation of certain service counters (the restaurant cashier stations and two change kiosks) without a 36 inch long portion accessible to wheelchair-users.

4. Continued operation of certain "employee work areas" (change kiosks), with allegedly sufficient wheelchair access for employees or contractors with disabilities.

5. Continued operation of bars (one in the theater [1] and two in the casino—the Alligator and the Crawfish) that lack 60 inch counter space usable by a person in a wheelchair.

### STIPULATION OF FACTS

"1. Plaintiffs Roger A. Long and Ronald Ray Smith are natural persons who reside in southern Nevada. They each require a wheelchair for mobility.

"2. Plaintiff Disabled Rights Action Committee (DRAC) is a Utah Non-profit corporation organized with the principal purpose of helping to eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provided access to housing, public building, transportation, goods and services. Members of DRAC are primarily individuals with disabilities and persons related to individuals with disabilities. DRAC membership includes residents of Nevada. As a result of their disabilities, certain accommodations are necessary to allow DRAC's members access to public buildings, transportation, goods and services.

"3. Defendant Coast Hotels and Casinos, Inc., a Nevada Corporation, does business as The Orleans Hotel and Casino at 4500 West Tropicana Avenue, Las Vegas, Nevada 89103. The Orleans Hotel and Casino provides vari-

---

**1.** This bar has also apparently been brought into compliance.

ous public accommodations including hotel accommodations, gaming facilities, restaurant facilities and a movie theater. The Orleans Hotel and Casino opened on December 18, 1996. The movie theater addition opened on December 13, 1997.

"4. The Orleans Hotel and Casino has 19 "accessible rooms" and 1 accessible suite, which is more than the minimum number of accessible rooms required under the regulations adopted under the Americans with Disabilities Act. Each of these rooms is specially constructed in accordance with Section 9 of the Americans with Disabilities Act Accessibility Guidelines. Each of these rooms contains doors with at least 32″ openings, grab bars in the toilet and shower areas and adequate spaces to make the room fully wheelchair accessible. The Orleans Hotel and Casino has approximately 819 "standard rooms" which have 32″ doors in all areas except the passage between the lavatory (sink) area in the bathroom and the toilet and bathtub which has approximately a 28″ door. Toilet facilities in "standard rooms" have no grab bars or other protective devices and none are required under the Americans with Disabilities Act Accessibility Guidelines.

"5. At the time the lawsuit in the instant case was filed, Coast operated two shuttle busses capable of holding up to 24 passengers between the Orleans Hotel & Casino and the Barbary Coast Hotel & Casino and the Gold Coast Hotel & Casino respectively. Neither of the busses was equipped with wheelchair lifts or wheelchair tie downs. The Orleans Hotel and Casino did offer to pay the fare for an accessible taxicab if a disabled patron wished to travel either to the Gold Coast or the Barbary Coast.

"6. At the time of this stipulation, The Orleans Hotel & Casino operates an on demand shuttle service to the Barbary Coast Hotel & Casino and the Gold Coast Hotel & Casino. Individuals with disabilities are served with an accessible van that is equipped with a wheelchair lift and wheelchair tie downs. The van also accommodates individuals who are not disabled including companions of those individuals with disabilities. Two 24 passenger buses which are not accessible, also operate on demand to shuttle passengers between the Barbary Coast Hotel

& Casino and the Gold Coast Hotel & Casino.

"7. At the time the lawsuit in the instant case was filed and at the time of this stipulation, there are nine cabanas located around the perimeter of the swimming pool at The Orleans. Of the nine cabanas, six are on an accessible route complying with ADAAG 4.3 that extends from the hotel entrance/exit across the east side of the pool. Three of the cabanas along this accessible route are large units and three of the cabanas are small units. There is a ceiling fan, table and chairs, a television monitor and a telephone in each of the large cabanas. The smaller cabanas contain the same amenities with the exception of the ceiling fan. There are an additional three cabanas that are located in a non-accessible area (accessed by two steps with no ramped access route). Two are large cabanas and one is a small cabana. The design of the cabanas on the accessible route are identical to the design of the cabanas in the non-accessible area. The cabanas along the accessible route are as close to the pool and hot tub as the non-accessible cabanas.

"8. At the time the lawsuit in the instant case was filed, The Orleans Bourbon Street Cabaret had access for wheelchair users but the performing stage did not. As of the date of this stipulation, the Bourbon Street Cabaret has an elevator lift that provides access to the performing stage for wheelchair users and other disabled individuals.

"9. At the time the lawsuit in the instant case was filed, The Orleans contained many service counters. Some of them provided a 36 inch long portion of such counter accessible to wheelchair users. Others did not contain a 36 inch long portion of such counter accessible to wheelchair users. Those that did not included the Branson Theater box office, the Branson Theater bar, the keno lounge, the gift shop, the hotel registration desk, the slot club desk change kiosks and restaurant cashier stations. At the time of this stipulation, all of the aforementioned locations have a 36 inch long portion of counter accessible to wheelchair users with the exception of 2 of 4 change kiosks in the casino and the restaurant cashier stations in which waiters and waitresses customarily have the

patron pay the bill at the table and the waiter or waitress takes the bill to the cashier and brings change (or a charge slip) to the customer.

"10. At the time the lawsuit in the instant case was filed and at the time of this stipulation The Orleans had three bars surrounding the gaming "pit" area, the Mardi Gras bar, the Alligator Bar and the Crawfish bar. The Mardi Gras bar is accessible to wheelchair users via a ramp. The Mardi Gras bar also has table seating and seating at the bar for wheelchair users. There is 30 (360 inches) feet of counter area that is accessible to wheelchair users at the Mardi Gras bar. The Alligator bar and the Crawfish Bar do not have a 60 inch long portion of counterspace that is useable by a person in a wheelchair.

"11. At the time the lawsuit in the instant case was filed, The Orleans contained pay phone locations that did not display directional signage indicating the location of the nearest bank of phones that did have a TDD device. At the time of this stipulation, there are directional signs at all required phone banks which indicate the location of the nearest phone which has a TDD device.

"12. At the time the lawsuit in the instant case was filed, change kiosks in the casino were elevated four inches above the ground to permit wiring to be placed underneath the change kiosks. As constructed, these change kiosks did not allow any employee or contractor using a wheelchair to independently approach, enter and exit the area. The main cashier cage was fully accessible in that it allowed any employee or contractor using a wheelchair to independently approach, enter and exit the area."

The foregoing Stipulation of Facts was duly executed and acknowledged by counsel for both parties. Plaintiffs rely solely upon the stipulated facts. Defendants have also submitted a Declaration by Bill Scott, Defendants' expert on the interpretation and application of ADA regulations and guidelines; diagrams and pictures of some of the areas in dispute (standard and accessible bathrooms and the accessible and non-accessible cabanas); and, the Declaration of Barry Lieberman, counsel for Defendants.

Defendants' expert, Mr. Scott, for reasons described in his Declaration, presents the opinion that the remaining situations do not violate the ADAAG or the ADA. Plaintiffs contest the use of his opinion, arguing that he is merely expressing an opinion on questions of law, thereby invading the province of the Court. Defendants counter that the matter presents combined issues of fact and law. The Court finds the expert's factual information informative, but will form its own opinions regarding the application of the law and regulations.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence that would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd.*, 585 F.2d at 952.

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir.1982); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir.1982).

It appears here that neither party claims there are material issues of fact which remain to be decided, except that Plaintiffs, by seeking a determination of liability for damages, take the position that if they are successful, then a trial must proceed on the issue of the amount of the damages.

Defendants contend that Plaintiffs have not submitted any facts by way of declaration, affidavit or exhibits and therefore their motion should fail. However, such a position neglects the Stipulation of Facts which have been stipulated to for the purposes of these motions. Accordingly, it appears that the issues presented are ripe for determination.

### STANDARD OF REVIEW FOR INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65 governs injunctive relief. The Supreme Court has held that to obtain injunctive relief, a party must show irreparable injury and the inadequacy of legal remedies. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Furthermore, this Court is obligated to balance the competing claims of injury or damage and the effect on each party if the injunction is granted. *Amoco Production v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

The Ninth Circuit has held that a party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) serious questions as to the foregoing and a balance of hardship sharply in plaintiff's favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987). This Court must exercise a "continuum of equitable discretion whereby the greater the relative hardship to the moving party, the less probability of success must be shown." *Regents of the University of Calif. v. ABC, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984).

### APPLICABLE STATUTES AND REGULATIONS

In 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Its purpose was to eliminate discrimination against individuals with disabilities (42 U.S.C. § 12101(B)).

Plaintiffs bring this action pursuant to Title III of the Americans with Disabilities Act (42 U.S.C. § 12181, et seq.) and Nevada Revised Statutes (hereafter "NRS") 651.070 and 651.090, which constitutes Nevada's version of the ADA (hereafter "Nevada–ADA").

The obvious reason for Plaintiffs' amendment to the complaint to include the Nevada–ADA is because it provides for monetary damages, while the federal ADA does not. *Cf. 42 U.S.C. § 12188 and § 2000a–3(a)* (authorizing only actions for injunctive relief); *Botosan v. Fitzhugh,* 13 F.Supp.2d 1047 (S.D.Cal.1998) (compensatory damages not recoverable under ADA); *Boemio v. Love's Restaurant,* 954 F.Supp. 204, 207 (S.D.Cal. 1997) (compensatory damages not recoverable under ADA); *Independent Living Resources v. Oregon Arena Corp.,* 982 F.Supp. 698, 771 (D.Or.1997) (in an action by a private party for violation of Title III of the ADA, the court may award only injunctive relief, not damages). In this Court's view, however, the Nevada statute authorizing monetary damages (NRS 651.090) may not apply to cases involving structural deficiencies. The language of that statute refers to actions by "persons" and appears to be directed toward personal activities which deny or deprive disabled persons their rights, or seeks to threaten or intimidate or harass persons with disabilities, similar to what one would expect in claims of discrimination based upon race, national origin, gender, religion, etc., where personal conduct, rather than structural defects, are the source of the discrimination.

The language of NRS 651.090 suggests that the discrimination be directed toward a specific individual. It is for this reason that this Court is of the opinion that the statute is intended to provide monetary damages for those classic cases of discrimination directed toward specific individuals and is not intended to provide a right to recover monetary damages for deficiencies in the design of a structure. *Cf. Independent Living Resources,* 982 F.Supp. at 773.

To this Court's knowledge, the Nevada Supreme Court has not ruled on this issue, and, for reasons stated below, this Court finds it unnecessary to try to divine what Nevada's courts will do.

The federal law provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*42 U.S.C. § 12182(a).*

The law requires newly constructed facilities to comply with the ADA and defines those facilities as those ready for occupancy by January 1, 1992 or later. *42 U.S.C. § 12183.* It is not contested that the Orleans falls within the required time period and qualifies as a newly constructed facility.

Congress directed the Department of Justice to issue regulations that include standards applicable to facilities covered by Title III. Those were actually accomplished and published by both the Department of Justice (28 C.F.R. Part 36 and Appendix A to Part 36) and the Architectural and Transportation Barriers Compliance Board (36 C.F.R. Part 1191 and Appendix A to Part 1191). Appendix A for each is known as the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities, and is commonly (and will hereafter be) referred to as the ADAAG. The Court will reference 28 C.F.R. Part 36 and its Appendix for uniformity.

## DISCUSSION AND MEMORANDUM OF DECISION

### FINDINGS OF FACT

The Court adopts and incorporates hereat, verbatim, the Stipulation of Facts agreed to by the parties. The Court also finds the following facts to be uncontroverted by sworn testimony of individuals having personal knowledge thereof:

1. In standard rooms the doorway into the toilet room will permit entry by a person using a walker and will permit a person to transfer from a wheelchair to the toilet. The widening of the door, while permitting the wheelchair to come somewhat closer to the toilet, would not have an appreciable benefit without moving the toilet and the installation of grab bars, which are not required by the ADAAG.

2. The cost of installing 32 inch doorways in standard rooms, between the lavatory (sink) and the toilet and bath would exceed $800,000,00.

3. The three pit bars, the Alligator Bar, Crawfish Bar and the Mardi Gras Bar are in close proximity to each other.

## DISCUSSION AND CONCLUSIONS OF LAW

### A. MONETARY DAMAGES

■ Plaintiffs ask the Court to find liability for damages, leaving the determination of the amount of damages for trial. Presumably Plaintiffs seek damages both for those items which have been rectified as well as the claims relating to ongoing conditions. The Court finds that Plaintiffs have failed to make the required showing of liability to them.

■ Liability may not be found in a vacuum. Plaintiffs must show that they suffered an injury, that Defendants' actions were the proximate cause of the injury, and that Defendants' actions were in violation of a duty owed to Plaintiffs. It is clear that Defendants had and have a duty to construct and maintain facilities that comply with the ADA and the Nevada–ADA, and that for a time, at least with respect to those items which existed but were corrected, there was a violation of that duty. However, the mere violation of a law or regulation does not establish injury any more than it is enough to compel the issuance of an injunction. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (a federal judge is not mechanically obligated to grant an injunction for every violation of law).

Plaintiffs are obligated to show, by competent evidence, that Defendants' actions caused injury to them. Otherwise, any disabled person, situated anywhere in the world, could make a claim for damages against the Defendants. It is the denial of accessibility to Plaintiffs which is at issue. Plaintiffs' motion utterly fails to establish that they were denied accessibility, much less that they were injured thereby. They merely state (and that not by way of affidavit) that they "observed" certain conditions existing at The Orleans on a given date. They do not show that they were guests, or attempted to be, or even desired to be, guests of the Orleans. They do not show that they were forced to seek accommodations elsewhere or even suggest that they were injured, monetarily, physically, or emotionally, by the conditions which they saw.

Plaintiffs have the burden of proving that they suffered injury by reason of The Orleans' actions, and that there is a reasonable probability of the existence of a causal connection between the Orleans' actions and some damage to them. This element of proof is called the fact of damage and is a predicate to finding liability. Only then can the Court permit a finding of the amount of damage.

Accordingly, Plaintiffs motion for partial summary judgment as to liability for damages is denied.

### B. STANDARD HOTEL ROOM BATH DOOR OPENINGS

■ Title 28 C.F.R. § 36.202 provides, in pertinent part, as follows:

(b) A public accommodation shall not afford an individual ... on the basis of a disability ... of such individual ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

(c) A public accommodation shall not provide an individual ... on the basis of a disability ... [a] facility ... or accommodation that is different or separate from that provided to other individuals unless such action is necessary to provide ... [a] facility or accommodation, or other opportunity that is as effective as that provided to others.

Title 36 C.F.R. § 36.305 provides, in pertinent part:

(a) Where a public accommodation can demonstrate that barrier removal is not readily achievable, the public accommodation shall not fail to make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those methods are readily achievable.

The foregoing portions of the regulations apply generally to all the following contested conditions.

ADAAG 9.1.2 and 9.1.3 provide that a hotel, such as The Orleans, requires that 2% of the total rooms be "accessible rooms" as described in chapter 9. The Orleans has a total of 839 rooms, of which 819 are standard rooms. It has 19 "accessible rooms" and one accessible suite, for a total of 20 accessible units. Two percent of 839 is 18. Accordingly, The Orleans exceeds the number of required sleeping units which are required to be "accessible."

The requirement for accessible rooms under ADAAG 9 includes requirements that all doors entering and within the unit be no less than 32 inches wide; that there be sufficient maneuvering room within the unit to provide access to the bed, toilet, shower or bath accommodations, etc.; and that grab bars or handrails be located at strategic locations. It is not contested that The Orleans' accessible rooms comply with the law and regulations.

The issue before the Court relates to the standard rooms, specifically the width of an interior door between the lavatory (sink) area and the toilet and bath. The issue arises from the language of ADAAG 9.4, which states as follows:

**9.4 Other Sleeping Rooms and Suites.** Doors and doorways designed to allow passage into and within all sleeping units or other covered units shall comply with 4.13.5

ADAAG 4.13.5 provides as follows:

**4.13.5 Clear Width.** Doorways shall have a minimum clear opening of 32 in. (815 mm) with the door open 90 degrees, measured between the face of the door and the opposite stop (see Fig. 24.(a), (b), (c), and (d)). Openings more than 24 in. (610 mm) in depth shall comply with 4.2.1 and 4.3.3 (see Fig. 24(e)).

At The Orleans, all doorways or passageways in standard rooms meet the 32 inch requirement, except for the door between the lavatory (sink) and the toilet and bath. That doorway is approximately 28 inches. Plaintiffs insist that the offending doorway constitutes a violation of the ADA statutes and seeks declaratory relief to that effect and injunctive relief mandating modification of the facilities to comply with the regulation standards.

Defendants contend that the language of the regulation only relates to access to and within the sleeping portion of the hotel rooms and further contends that compliance would be unreasonably cost prohibitive and would not serve to increase the accessibility of standard rooms nor diminish the difficulty or hostility which may presently exist. The Court finds Defendants' first argument unpersuasive, but agrees with the second.

The parties have noted that the regulations involved in these motions and this lawsuit have not had the benefit of judicial interpretation. There has been a thorough and well-reasoned decision rendered by United States Magistrate Judge Ashmanskas, in the District of Oregon, dealing with the location and line-of-sight requirements of ADAAG 4.33 (and the companion Oregon ADA law) which addresses wheelchair access to arena or stadium facilities, and the applicability of Title III to suites in such facilities. *Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698 (D.Or.1997). Others have addressed the same issue as Judge Ashmanskas. *Caruso v. Blockbuster–Sony Music Enter. Centre*, 968 F.Supp. 210 (D.N.J.1997); *Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579 (D.C.Cir.1997). However, none of those judges were called upon to address the ADAAG provisions at issue here. Accordingly, this appears to be a matter of first impression.

This Court finds itself perplexed at the language or the purpose of the requirements of ADAAG 9.4. The regulations appear sufficiently clear about the requirements for "accessible" rooms. The Orleans has met those requirements in its construction of "accessible" rooms. The Court can understand the desirability of having the doors into standard rooms accessible to users of wheelchairs to accommodate visits by them to the rooms of friends who do not require accessible rooms. However, the extension of that accommodation does not appear to be required to the use of the toilet or bath facilities. Had that been the intention, why is there no provision for maneuverability within the toilet area or provision for the installation of bars to assist the disabled in the use of such

facilities. For that matter, if that were the intention, why do the regulations and guidelines not call for all rooms to meet the accessibility standards? In this case, widening the door, without an attendant requirement to relocate the toilet and install the necessary safety bars, appears to be a meaningless gesture. Toilet and bath facilities are available in accessible rooms. Visitors to occupants of standard rooms have access to those facilities in their own rooms, if they are also guests at the hotel, or, if not, access to accessible public facilities. Furthermore, the need to bathe in standard rooms is not likely for such visitors. And, the toilet is accessible, though not as conveniently as in accessible rooms. Merely widening the door does not make the toilet more accessible, certainly not accessible in the way contemplated in "accessible" rooms.

The Orleans has made a good faith effort to comply with this provision of the regulations and guidelines. They have provided more than the required accessible rooms. They have provided entrance doors into standard rooms, as well as access to the lavatory (sink) area, which conform to the 32 inch requirement. They have located the toilet so it can at least be accessed, albeit not as conveniently, by walker users and wheelchair users.

While this may be considered a technical violation of the language of the Guidelines, the Court finds there has been substantial compliance with the spirit of the law. Considering the enormous expense required to modify the structure, and the near absence of hardship and that constituting a minimal inconvenience to wheelchair users, this Court is loathe to grant injunctive relief to Plaintiffs on this issue. Accordingly, Plaintiffs' motion will be denied and Defendants' motion is granted as to this issue.

*B. POOL CABANAS*

■ In the vicinity of the pool and hot tub are nine cabanas, four are small and five are large. Each has a table and chairs, a television and a telephone. The large cabanas also contain a ceiling fan. Six of the cabanas (three small and three large) are on an accessible route (*i.e.*, by ramp). Three cabanas (one small and two large) are not (*i.e.*, require using two steps). The accessible cabanas are equally close and convenient to the pool, and hot tub, as are the non-accessible cabanas. Apparently the cabanas are not rented or reserved like a room, but are used at random by pool and hot tub users.

Plaintiffs contend that ADAAG 4.3.2(2) requires accessibility to all cabanas. It states:

> At least one accessible route shall connect accessible building, facilities, elements, and spaces that are on the same site.

Defendants claim that the provisions of ADAAG 4.3 (**Accessible Route**) do not require that every facility be accessible. They note that the six accessible cabanas are on an accessible route that extends from the hotel entrance/exit across the east side of the pool, around the south end of the pool by a gazebo and around the west side of the pool. Three of the six are large cabanas. All cabanas have essentially the same amenities.

Defendants also note that ADAAG 2.2 provides that alternate designs can be used if they provide substantially equivalent or greater access to and usability of the facility. More significantly, Defendants argue, and the Court agrees, that the ADA does not require every element of a place of public accommodation to be accessible. For example, every seat location in a stadium is not required to be wheelchair-accessible. Every room in a hotel is not required to be fully accessible. Every stall in every bathroom is not required to accommodate wheelchairs. Every entrance or exit is not required to be wheelchair-accessible. In this instance, fully two-thirds of the cabanas are accessible. Wheelchair users are not denied full and equal "enjoyment" of the facilities merely because three of the cabanas are not placed on the accessible route.

In this instance there is an "accessible route" to "accessible facilities," in compliance with ADAAG 4.3.2(2). Accordingly, Plaintiffs' motion is denied and Defendants' motion is granted as to this issue.

*C. SERVICE COUNTERS*

■ Originally Plaintiffs complained of the absence of accessible counters in the Branson Theater Box Office, Keno lounge, gift shop, registration desk, the slot club desk, the slot

change kiosks, and the restaurant cashier stations. Apparently all are currently in satisfactory compliance except for the slot change kiosks and the restaurant cashier stations, which are still contested.

The basis for Plaintiffs' claims is ADAAG 7.2(2)(i) which states as follows:

(2) At ticketing counters, teller stations in a bank, registration counters in hotels and motels, box office ticket counters, and other counters that may not have a cash register but at which goods or services are sold or distributed, either:

(i) a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm): or

Plaintiffs argue that the foregoing guideline requires that the restaurant cashier stations and the slot change kiosks have the required accessible counter. Defendants, who do not contest that none exist in the restaurants or two of the kiosks, argue that the guidelines do not require accessible counter space at these locations.

Defendants note that two of the four slot change kiosks do have accessible counters and two do not. Further, they argue, the main cashier's cage is accessible to wheelchair users.

The Court notes that the clear language of ADAAG 7.2(2)(i) requires that the "main counter" provide the access, which is clearly the case here. Furthermore, 7.2(2)(ii) provides that "an [accessible] auxiliary counter ... in close proximity" is sufficient. In this case both the main cashier cage and two of the four slot kiosks are accessible. Clearly, the arrangement complies with the requirements of the Guidelines.

■ Defendants argue that ADAAG 5, not ADAAG 7, governs restaurants and cafeterias, and that section does not require that the restaurant cashier station be of a certain height or width. Rather, it requires accessibility where the food and beverages are served. Indeed, ADAAG 5.1 provides, in pertinent part, "Where fixed tables (or dining counters **where food is consumed** but there is no service) are provided, at least 5 percent, but not less than one, of the fixed tables (or a portion of the dining counter) shall be accessible ... (emphasis added)." In ADAAG 5.2,

dealing with "Counters and Bars," it again uses the words, "where food or drink is served."

At The Orleans, in the restaurants, café, and grille in question, wheelchair users have full access to the tables where food is served. The only purpose of the restaurant cashier is for payment. It is the practice for all patrons of these eating facilities to pay their food server at the table, who then returns their change to them at the table. Thus, not only is there no requirement that the restaurant cashier be wheelchair accessible, there is no need for it. Plaintiffs' argument, that perhaps a wheelchair user might elect to pay the bill directly, rather than to the server, is without merit. The present situation provides wheelchair users the same services as those provided to and utilized by the general public. The law does not require more.

Accordingly, Plaintiffs' motion is denied and Defendants' motion is granted as to this issue.

### D. COUNTERS IN BARS

■ Originally, Plaintiffs complained that three bars were inaccessible, one in the theater and two in the casino. Subsequently, the theater bar was apparently brought into compliance. Accordingly, at issue are the remaining two bars in the casino.

There are three bars in the casino area surrounding the "pit" where live gaming takes place. They are the Alligator Bar, the Crawfish Bar and the Mardi Gras Bar. Of the three, only the Mardi Gras Bar has wheelchair "accessible" sections meeting the requirements of the ADAAG. In fact, all the tables and all the counter space (some thirty feet of counter space) in the Mardi Gras Bar is wheelchair accessible. The three bars are in close proximity to one another.

At issue is ADAAG 5.2 which provides as follows:

5.2 **Counters and Bars.** Where food or drink is served at counters exceeding 34 in (875 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in (1525 mm) in length minimum shall be provided in compliance with

4.32 or service shall be available at accessible tables within the same area.

Plaintiffs contend that each bar is to be considered independently of the other and that each is required to provide the 60 inches of accessible counter space required. Defendants contend that because the three bars are all in the casino area, and one is completely accessible, that the equivalency requirement of being in "the same area" is met. The difference is in the interpretation of the meaning of the last phrase of the above guideline, "or service shall be available at accessible tables within the same area."

Unfortunately, neither party saw fit to provide the Court with a description, diagram or photograph of each of the three bars. Neither is the Court provided with information showing the layout of the casino area showing the location of the bars one to another. The ultimate issue here is the meaning of the words, "same area." Do those words refer to the area within each bar, or the area within the casino?

There are no facts presented to suggest the presence of tables in each bar. The Court finds the reasonable interpretation of the last phrase of 5.2 to mean that if, in a given "area" there is not an accessible counter, if there are accessible tables, the guideline is met. The parties have given no indication that there are accessible tables in each bar. Therefore, the Court concludes that the bars consist of counters only, or, if tables are present, they do not meet the accessibility requirements of the ADAAG.

In reaching its decision on this issue, the Court finds an analogy in a complex of movie theaters. Arguably, all the theaters are in the same "area," *i.e.*, within the movie complex. However, each theater shows a different movie. One would reasonably expect that wheelchair accessibility is necessary in each theater.

Likewise, here the bars are in casino area, but each apparently (if the names of the bars suggest anything) employs a different theme. Even if the drinks are identical, the ambiance may be the attraction to any given bar. Bars are often places of socialization with

friends, who themselves may prefer the atmosphere in one bar over another. This is not comparable to the cabanas discussed above, where all are identical and provide the same amenities. Accordingly, to receive full and equal enjoyment of these facilities, there should be wheelchair accessibility in each bar. Modification of sixty inches of counter space would not place an egregious financial burden on The Orleans. Accordingly, the Court grants Plaintiffs' motion and denies Defendants' motion as to this issue and declares The Orleans to be in violation of ADAAG 5.2 with respect to the counter space in the Alligator Bar and the Crawfish Bar and orders compliance within six (6) months of the entry of this order.

### E. EMPLOYEE WORK AREAS

 This dispute involves the work areas for persons making change for customers, *i.e.*, the main cashier cage and the change kiosks located in the casino.[2] The main cashier cage is fully accessible including the requirement for maneuverability. However, Plaintiffs contend that each of the kiosks does not provide ready access to employees or contractors of The Orleans, because they are elevated four inches off the floor to accommodate wiring underneath the kiosk. The guideline in question is ADAAG 4.1.1(3) which provides as follows:

> (3) Areas Used Only by Employees as Work Areas. Areas that are used only as work areas shall be designed and constructed so that individuals with disabilities can approach, enter, and exit the areas. These guidelines do not require that any areas used only as work areas be constructed to permit maneuvering within the work area or be constructed or equipped (i.e., with racks or shelves) to be accessible.

An explanatory appendix to that guideline is A4.1.1(3) which provides:

> A4.1.1(3) **Areas Used only by Employees as Work Areas.** Where there are a series of individual work stations of the same type (e.g., laboratories, service counters,

---

**2.** Originally there was also a complaint about the inaccessibility of the performance stage in The Orleans Bourbon Street Cabaret. However, the installation of an elevator lift has provided access to the performing stage for wheelchair users and other disabled individuals.

ticket booths) 5%, but not less than one, of each type of work station should be constructed so that an individual with disabilities can maneuver within the work stations.... Modifications required to permit maneuvering within the work area may be accomplished as a reasonable accommodation to individual employees with disabilities under Title I of the ADA.

Plaintiffs argue that the foregoing provisions are all well and good for a cashier, but do not accommodate supervisory personnel who may be required to enter the kiosks to monitor the work of cashiers. However, Plaintiffs provide no evidence that supervisory personnel are required to enter the kiosks to monitor the cashiers. Contrarily, Defendants point out that the cashiers can be monitored by video and other electronic means, and are not required to enter the kiosks in order to supervise. In sum, Plaintiffs appear to acknowledge that The Orleans is in compliance with 4.1.1(3) and A4.1.1(3), but argue that it should comply with a higher requirement because of some speculative (and apparently non-existent) need of supervisors to enter the kiosks.

This Court finds The Orleans in full compliance with ADAAG 4.1.1(3) and A4.1.1(3) and denies Plaintiffs' motion and grants Defendants' motion as to this issue.

### CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (# 15) is **denied** as to the issues of monetary damages, standard hotel room bath door openings, pool cabanas, service counters, counters in bars, and employee work areas, but **granted** as to the issue of counters in bars, as more fully set forth in this opinion.

Defendants' Motion for Summary Judgment (# 16) is **granted** as to the issues of monetary damages, standard hotel room bath door openings, pool cabanas, service counters, counters in bars, and employee work areas, but **denied** as to the issue of counters in bars, as more fully set forth in this opinion.

Summary Judgment is entered accordingly.