Geoffrey **SHULTZ**, a minor By and Through his guardian ad litem, Robin **SHULTZ**, Plaintiff,

v.

**HEMET YOUTH PONY LEAGUE, INC.,** a corporation; **Pony Baseball, Inc.,** a corporation; **Don Nelson,** an individual; **David Dekonty,** an individual; and Does 1 through 10, Defendants,

and Related Counter Actions.

No. 95–1650 CBM (Mcx).

United States District Court, C.D. California.

Aug. 22, 1996.

David H. Raizman, Kathleen M. Wohn, Western Law Ctr For Disability Rights, Los Angeles, CA, for Robin Shultz, Parent and Natural Guardian of Geoffrey Schultz.

Kevin A. Speir, Leland H. Bray Law Offices, Hemet, CA, John C. Bush, John C. Bush Law Offices, Hemet, CA, for Hemet Youth Pony Baseball Inc.

Rob Schelling, Rob Schelling Law Offices, Nuevo, CA, for Pony Baseball Inc.

Gilbert Y. Nishino, Gilbert Y. Nishino Law Offices, Hemet, CA, for Don Nelson.

David Dekonty, Hemet, CA, pro se.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT

CONSUELO BLAND MARSHALL, District Judge.

This matter is before the Court on Plaintiff's Motion for Summary Adjudication of Liability. The parties came before the court, the Honorable Consuelo B. Marshall, presiding, on July 15, 1996. The Court has considered the motion papers, parties' arguments, and the evidence, and based thereon, the Court GRANTS the motion.

Plaintiff Geoffrey Shultz was born on June 1, 1983. Plaintiff has spastic diplegia cerebral palsy, a condition which severely affects the muscles of Plaintiff's lower extremities, causing them to spasm and contract. Nonetheless, Plaintiff is able to walk, run, and play baseball with the assistance of crutches.

Defendant Pony Baseball Inc. ("PONY") is a national nonprofit corporation that serves as the administrative body for baseball and girls softball leagues. Defendant Hemet Youth Pony League, Inc. ("HYPL") is a nonprofit corporation organized to provide a youth baseball program in Hemet, California.

HYPL is a member affiliate of PONY. It is PONY that promulgates the official Rules and regulations for each of its member leagues. (Wohn Decl., Exhs. A, B and C). Absent express approval from PONY's headquarters, no member league may adopt any rule that varies from PONY's playing Rules. (Wohn Decl., Ex. A, P. 13, Ex. B and C, p. 8).

The Pony baseball program is divided into seven separate age brackets, or "leagues" to which individual players are assigned. A player's assignment to a particular division is based upon that player's "legal age"; i.e. where a player's birth date falls within certain specified dates. Player participation in the Pony baseball program is open to the general public, so long as an individual child or youth is between 5 and 18 year of age, (or between 6 and 19 for Pony's girls softball program), resides within the geographic boundaries reserved for the Pony member league in which he or she wishes to play, and pays the annual registration fee. There are no other eligibility criteria. (Gillespie Dep. 59:5–60:16; Wohn Decl., Exh. T).

On March 26, 1994, Plaintiff's father attempted to register Plaintiff, who was eleven (11) years old at the time, to play baseball with HYPL. Prior to 1994 baseball season, Plaintiff had only play T–ball. Since Plaintiff had never played organized baseball under circumstances in which he was pitched to by another player, Plaintiff's father requested that Plaintiff be permitted to "play down" or, in other words, to play in a division reserved for children younger than Plaintiff, namely the Mustang division (players 9–10 years of age).

HYPL informed Plaintiff's family that HYPL Board would have to vote on the issue since assignment to an age bracket was controlled by PONY's rules and strictly enforced. On April 20, 1994, Janine Mundwiler, a member of HYPL's Board of Directors, contacted Roy Gillespie, the CEO of Pony at that time, and inquired as to whether a "handicapped youth" should be permitted to "play-down." (Wohn Exh. N). Roy Gillespie responded to HYPL's inquiry by a letter dated April 21, 1994 in which he addressed the issue of a "disabled player" who requires crutches to play. (Wohn Exh. G). There-

upon, HYPL Board refused to let Plaintiff play outside his legal age division stating that it would be a violation of Pony Baseball rules to permit anyone to "play-down."

As a result, the present action was filed by Plaintiff. The issue in this matter is whether Defendants violated Title III of the Americans with Disabilities Act, California Unruh Civil Rights Act, Cal Civil Code § 51 and § 54.1, by their failure or refusal to accommodate plaintiff's disability or to provide plaintiff an opportunity to participate in the HYPL program.

The crux of the instant action is whether a baseball program must modify its traditional policies, rules and regulations to accommodate the needs of a child with a disability, in order to provide that child an opportunity to participate which is both appropriate for his needs as a person with a disability that substantially limits his mobility, and equivalent to opportunities provided to his non-disabled peers. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The moving party bears the Burden of informing the Court of the basis for its motion and identifying parts of the record which it believes indicate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to set forth affirmative evidence. To withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). *Cert denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party does not satisfy his burden by merely relying upon his own allegations and pleadings. *Hansen v. Black*, 885 F.2d 642, 644 (9th Cir.1989).

Rather, he or she must "produce at least some 'significant probative evidence tending to support the complaint'." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir.1990) (citations omitted).

Title III of the ADA makes it unlawful for an owner or operator of a place of public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the facilities, privileges, advantages or accommodations of a place of public accommodation. 42 U.S.C. § 12182(a). In the instant action, the Court finds that Plaintiff has established his prima facie ADA case because he has shown that (1) he is within the protected class of persons with disabilities; (2) defendants are owners or operators of a place of public accommodation; and (3) defendants discriminated against plaintiff by denying him a full and equal opportunity to participate in or benefit from defendants' baseball program on the basis of his disability.

The parties agree that Plaintiff is an individual with a disability entitled to the protection of the Americans with Disabilities Act. (Plaintiff's Statement of Undisputed Facts); 28 C.F.R. § 36.104(1)(iii)(2). Further, the Court finds that Title III's definition of "place of public accommodation" is not limited to actual physical structures with definite physical boundaries. Therefore, Defendants are "a place of public accommodation" under the ADA irrespective of their link to any physical facilities. *Carparts Dist. Center v. Automotive Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir.1994) ("In drafting title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities.") Lastly, having reviewed the record of this case, the Court finds that Defendants excluded Plaintiff from Pony baseball program on the basis of assumed and unsubstantiated concerns of a possible risk of harm to Plaintiff and other players, and insurance ramifications. It is evident that HYPL contacted Pony Baseball, Inc. and sought Pony's advice regarding HYPL's denial of disabled youth's request to "play down", and whether this was a correct inter-pretation of Pony's Rules. HYPL relied upon Pony's response letter dated April 21, 1994, in which Roy Gillespie, then-President of Pony, informed HYPL that ADA does not require HYPL to accept any disabled player. In fact, in his letter, Mr. Gillespie stated that it would be proper for a Pony league to refuse to accept into the program "a child who requires crutches to walk ..." Wohn Decl., ¶8, Exh. G; Gillespie dep., at 52:20–5318.

In his letter of April 21, 1994, Mr. Gillespie opined that Pony leagues "should make every effort to include children with disabilities in our leagues, unless: (1) Participation would mean assumption of undue risk on the part of the participant due to the physical demand of the game. However, at the time HYPL and Pony refused Plaintiff's request, neither knew anything about Plaintiff's ability to run or to engage in reflexive action, nor did any Pony representative make any effort to ascertain this information. Thus, no one at HYPL nor Pony knew what, if any, significant risks to Plaintiff's health or safety existed or were likely to occur by virtue of the fact that Plaintiff uses crutches when he plays baseball. At no time during 1994 did HYPL or Pony consider any modifications to any of Pony's Rules, policies or practices that might accommodate Plaintiff's disability.

It is irrefutable that PONY knew that the inquiry regarding the age-bracket division rules was being made because of a disabled youth's desire to play baseball. (Wohn Exh. G). It is also clear that at the time HYPL's Board of Directors voted not to allow Plaintiff to "play-down" an age division, the Board members knew Plaintiff was disabled and that his request to "play-down" was in fact a request for accommodation of his disability. Mundwiler Dep., at 39:16–40:3, 146:5–22; DeKonty Dep. at 77:19–78:8; Nelson Dep. At 114:3–15.

Therefore, the Court finds that Defendants' failure to make necessary and reasonable attempts to ascertain what modifications, if any, were plausible in order to accommodate Plaintiff's disability, either by permitting him to "play down", or in the most integrated setting appropriate to plaintiff's individual needs, was discriminato-

ry inaction against Plaintiff on the basis of Plaintiff's disability. "It is imperative that Americans with disabilities be brought fully into the mainstream of society 'in other words, full participation in and access to all aspects of society.'" *Anderson v. Little League Baseball, Inc.,* 794 F.Supp. 342, 344 (D.Az.1992).

BASED ON THE FOREGOING, the Court GRANTS Plaintiff's Motion for Summary Adjudication of Liability.

IT IS SO ORDERED.