Lloyd **BURKHART**, Plaintiff,

v.

**ASEAN SHOPPING CENTER, INC.,**
**Dayton–Hudson Corporation,**
**Defendants.**

No. Civ 98–1745–PHX–ROS.

United States District Court,
D. Arizona.

July 1, 1999.

Lunsford Dole Phillips, Law Offices of Lunsford Dole Phillips, Honolulu, HI, for Lloyd Burkhart, plaintiff.

Richard K Mahrle, Gammage & Burnham PLC, Phoenix, AZ, for Asean Shopping Center, Inc., defendant.

Linda Stephanie Husar, Timothy L Pierce, Nicole Marie Duckett, Thelen Reid & Priest LLP, Los Angeles, CA, for Dayton–Hudson Corporation, defendant.

## ORDER

SILVER, District Judge.

## FACTUAL BACKGROUND

On September 28, 1998, Plaintiff, a disabled man, brought this suit pursuant to 42 U.S.C. § 2000a–3(a), alleging that Defendants failed to comply with portions of Title III of the Americans with Disabilities Act of 1990(ADA). 42 U.S.C. § 12101 *et seq.* Specifically, Plaintiff alleges that Defendants' retail establishments contain barriers which limit accessibility by the disabled in violation of the "specific prohibitions" section of Title III of the ADA. 42 U.S.C. § 12182(b)(2). In pertinent part, this section of the ADA dictates that architectural barriers preventing equal access to public facilities be removed to ensure that no individual with a disability is denied equal access. *See* 42 U.S.C. § 12182(b)(2)(A)(iv).

Plaintiff argues that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claim involves a federal question. (Pl.'s Compl. at 1). Defendant Asean Shopping Center, Inc. contests the Court's subject matter jurisdiction in this matter and moves to dismiss the claim. (Def. Asean's Mot. to Dismiss at 1). Defendant Dayton–Hudson Corporation, the owner of Target stores, also challenges the Court's subject matter jurisdiction, in a separate motion, and moves to dismiss or stay the case.[1] (Def. Dayton–Hudson's Mot. to Dismiss at 1). Both Motions contain the argument that Plaintiff was required by 42 U.S.C. § 2000a–3(c) to give written notice of the alleged violations to the "appropriate state or local authority," in this case the Arizona Attorney General, at least thirty days before the filing of this action.[2] Defendants contend that, absent notification, the Court lacks subject matter jurisdiction over the case. Dayton–Hudson further argues that Plaintiff has to not only file notice, but also exhaust the state administrative process that begins when notice is filed. (*Id.* at 2)

On June 9, 1999, over five months after Asean filed its Motion to Dismiss and almost three months after Dayton Hudson filed its Motion to Dismiss, Plaintiff filed a response in which he established that he filed notice with the Civil Rights Division of the Arizona Attorney General's office on April 14, 1999. (Pl.'s Mem. in Opp'n to Def. Dayton–Hudson's Mot. to Dismiss at 2–3). Plaintiff continues to argue that no such notification is required.[3] (*Id.* at 2).

---

1. Defendants requested that their motions be withdrawn on June 28, 1999. However, after conversing with counsel to all parties and informing them that the Court had already prepared an order ruling on the motions, counsel agreed that the order should be issued and counsel reinstated their motions to allow the Court to issue this Order.

2. Because the Defendants' Motions contain similar arguments the Court will not henceforth distinguish between the two.

3. In his response to Defendant Asean's Motion, Plaintiff contends that the Department of Justice supports his argument that plaintiffs are not required to file notice with the Arizona Attorney General before proceeding under Title III of the ADA. (Doc. 4 at 6–7). To

Because Defendant Dayton–Hudson has raised the issue of exhaustion, the Court will determine whether the statute requires notice and, if so, whether exhaustion also is required.

## LEGAL DISCUSSION

42 U.S.C. § 2000a–3(a) is incorporated into Title III of the ADA by 42 U.S.C. § 12188(a)(1) which reads:

> The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter ... Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

The relevant portion of § 2000a–3(a) states that:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventative relief, including an application for a permanent or temporary injunction, restraining order, or other order may be instituted by the person aggrieved.

Defendants argue that § 2000a–3(a) is limited by 42 U.S.C. § 2000a–3(c) which provides that:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State ... which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no civil action may be brought under subsection (a) of this section before the expiration of thir-

ty days after written notice of such alleged act or practice has been given to the appropriate State or local authority ... provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

Applying § 2000a–3(c), the state of Arizona has laws that prohibit discrimination against disabled people. *See* A.R.S. § 41–1492. Specifically, A.R.S. § 41–1492.02, ¶ F(4)–F(5) contains provisions which require the removal of architectural barriers and ensure equal access to the disabled. The Arizona Attorney General is authorized to grant or seek relief from discriminatory practices against disabled people. *See* A.R.S. § 41–1492.09(A). Therefore, if § 2000a–3(c) applies to this action, as Defendants argue, then Plaintiff should have complied with § 2000a–3(c) by providing the required thirty days notice to the Arizona Attorney General's office before bringing the instant civil enforcement action pursuant to § 2000a–3(a).

There is no controlling law in the Ninth Circuit on this issue. Some federal courts have held that plaintiffs are required to comply with § 2000a–3(c), while others have not. In holding that Congress did not intend for § 2000a–3(c) to be incorporated into Title III of the ADA, four district courts have relied on the plain language of § 12188(a)(1) and the doctrine of *expressio unius est exclusio alterius.* This doctrine provides that, when a statute enumerates particular subjects, the court should assume that all those not mentioned are excluded. *Doukas v. Metropolitan Life Insurance Company,* No. CIV. 4–478–SD, 1997 WL 833134, at *3 (D.N.H. Oct.21, 1997). Applying the doctrine, these courts have concluded that, because Congress explicitly referred to § 2000a–3(a) in the text of the ADA, had Congress intended that § 2000a–3(c) apply, it would have included

---

support this proposition, Plaintiff cites an Amicus Brief from a case filed in the District of Maine. Plaintiff does not indicate the author of this Brief. However, even assuming

that this Brief was authored by the Department of Justice, such briefs are not appropriate authority. Accordingly, the Court will disregard this source of support.

the latter explicitly as well. *See Bercovitch v. Baldwin School,* 964 F.Supp. 597, 605 (D.P.R.1997); *See also Botosan v. Fitzhugh,* 13 F.Supp.2d 1047, 1050 (S.D.Cal.1998) (interpreting the plain language of § 12188(a)(1) to exclude § 2000a–3(c)); *Guzman v. Denny's, Inc.,* 40 F.Supp.2d 930, 934–35 (S.D.Ohio 1999) (basing its holding that § 2000a–3(c) does not apply to Title III of the ADA on the doctrine *expressio unius est exclusio alterius* ); *Doukas,* 1997 WL 833134, at *3 (assuming that Congress's reference to § 2000a–3(a) excludes § 2000a–3(c)).[4]

The Court finds the portion of the plain language of § 12188(a)(1) relied upon by the decisions set forth above to be inconclusive on the issue of whether § 2000a–3(c) applies to Title III of the ADA. Plaintiff's argument that explicit inclusion of § 2000a–3(a) in § 12188(a)(1) excludes other sections of § 2000a–3 from the ADA has merit. However, this interpretation fails to consider the second sentence of § 12188(a)(1) which states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." This additional provision of Title III will be examined below.

■ Other district courts addressing this issue have based their holdings on the legislative history of the ADA. When the language of a statute is unclear the court may look to legislative history in order to interpret the statute. *United States v. Lewis,* 67 F.3d 225, 228 (9th Cir.1995). In *Mayes v. Allison,* 983 F.Supp. 923, 924 (D.Nev.1997), the district court in Nevada found the House of Representatives' "Joint Explanatory Statement of the Committee of Conference" ("Joint Explanatory Statement") to be dispositive. The *Mayes* court focused on a portion of the Joint Explana-

tory Statement which stated that the "House amendment specifies that the remedies and procedures of Title II of the 1964 Civil Rights Act shall be the powers, remedies, and procedures Title III [of the ADA] provides." *Id.* Because Title II of the Civil Rights Act of 1964 contains the text of 42 U.S.C. § 2000a–d, a district court in Nevada interpreted this portion of the Joint Explanatory statement to mean that Congress intended § 2000a–3(c) to be incorporated into Title III of the ADA. *Id.* In *Botosan,* however, the Southern District of California interpreted the same provision quoted above to exclude any procedure or remedy not specifically mentioned in the Joint Explanatory Statement. *Botosan,* 13 F.Supp.2d at 1050. Thus, because the Joint Explanatory Statement does not specifically mention § 2000a–3(c), the district court concluded that Congress did not intend to include this section in the ADA. *Id.* District courts have also come to differing conclusions regarding the Senate floor debate on the ADA. *Compare id.* (indicating that statements by Senator Harkin signified that Title III of the ADA does not implicitly include § 2000a–3(c)), *with Snyder v. San Diego Flowers,* 21 F.Supp.2d 1207, 1210 (S.D.Cal.1998) (stating that the Senate floor debate "did not shed light on the issue" of whether § 2000a–3(c) is implicitly included in Title III).

The Court concludes that the legislative history preceding the adoption of the ADA is not determinative of whether the ADA incorporates the notice requirement of § 2000a–3(c). The Joint Explanatory Statement can be used to support either position. The language cited above and relied on in *Mayes* seems to indicate that *all* remedies and procedures of Title II of the Civil Rights Act of 1964 are part of the enforcement process incorporated into Title III of the ADA. However, because the remedy and procedure sections of Title II

---

**4.** The ruling in *Doukas* by the district court of New Hampshire is contrary to its earlier holding in *Daigle v. Friendly Ice Cream,* 957 F.Supp. 8, 10 (D.N.H.1997). In *Daigle* the court held that the plaintiff must comply with the requirements of § 2000a–3(c) to confer the court with subject matter jurisdiction in a private suit under Title III of the ADA.

of the Civil Rights Act of 1964 include language which overlaps that found in Title III of the ADA, the argument that all eleven paragraphs of remedies and procedures in Title II are included in Title III is tenuous at best. For example, both Title II of the Civil Rights Act at 42 U.S.C. § 2000b(a) and Title III of the ADA at 42 U.S.C. § 12188(b) contain similar provisions regarding the role of the United States Attorney General in enforcing violations.[5] In addition, both 42 U.S.C. § 2000a–3(b) and 42 U.S.C. § 12205 contain an attorney's fees provision.[6] Thus, inclusion of these provisions of Title II of the Civil Rights Act in Title III of the ADA would be repetitive. The fact that Title III contains remedies which are unavailable under Title II also supports the argument that the House did not intend Title II to be a verbatim addition to Title III because application of these statutes would lead to inconsistent results. *Compare* Civil Rights Act of 1964, 42 U.S.C. § 2000a–5(a) (citing injunction and restraining order as the means of relief under Title II), *with* 42 U.S.C. § 12188(b)(2)(C) (stating that the court may assess a civil penalty against the offender in addition to an injunction or restraining order).

The Senate floor debate provides even less guidance than does the Joint Explanatory Statement of the House Conference Committee. Senator Harkin's statement that the ADA's administrative remedies apply only in the employment situation (i.e., Title II of the ADA) appears to support the Plaintiff's position that no notice is required. *See* 135 Cong.Rec. S10734–02, 10760 (daily ed. September 7, 1989). However, read in context, the colloquy between Senators Harkin and Bumpers proves inconclusive due to Senator Harkin's repeated evasiveness when asked by Senator Bumpers whether there is any prohibition against a private person filing suit under Title III of the ADA. *Id.*

Regardless of whether the courts discussed above have relied on the plain language of the statute or the legislative history to justify their conclusions, many of these courts have framed the issue as whether the plaintiff is required by ADA Title III to exhaust his administrative remedies before filing a private action. *See Snyder*, 21 F.Supp.2d at 1208; *Botosan*, 13 F.Supp.2d at 1049; *Mayes*, 983 F.Supp. at 924; *Bercovitch*, 964 F.Supp. at 605. These courts then proceed to discuss whether the notice provision of § 2000a–3(c) is applicable to Title III. By using the terms "notice" and "exhaustion of administrative remedies" interchangeably, these courts have erroneously failed to distinguish between these concepts. For example, in *Bercovitch*, the court bases its holding that "Title III imposes no requirement of exhaustion of administrative remedies" on the rationale that if Congress wanted to make "notice to state authorities a requirement under this Title, it would have explicitly done so." *Bercovitch*, 964 F.Supp. at 605.

■ This Court concludes that the phrase "exhaustion of administrative remedies" signifies an evaluation of a plaintiff's claim by the state authority that might lead to a final conclusion by the state authority about the merits of the alleged violation, whereas the notice provision of § 2000a–3(c) only requires a perfunctory notice to the state authority of the violation.[7] Thus, it is possible for a plaintiff to

---

**5.** 42 U.S.C. § 2000b(a) gives the Attorney General authority to institute "a civil action in any appropriate district court of the United States against such parties [that violate Title II] and for such relief as may be appropriate." Similarly, 42 U.S.C. § 12188(b)(1)(B) gives the Attorney General the power to "commence a civil action in any appropriate United States district court."

**6.** Both 42 U.S.C. § 2000a–3(b) and 42 U.S.C. § 12205 state that the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee."

**7.** To illustrate this point note that in contrast to Title III of the ADA, Title I explicitly requires exhaustion of administrative remedies by incorporating 42 U.S.C. § 2000e–5(f)(1) which states that a private suit may only be

satisfy the notice requirement of § 2000a–3(c) without exhausting his administrative remedies. This distinction is important because it allows for the possibility that Congress intended that the state authority be notified prior to the institution of a private suit, but did not intend for the plaintiff to fully pursue an administrative remedy. By failing to make this distinction, the courts may not have considered the possibility that notice but not exhaustion is required by § 2000a–3(c). *See Snyder,* 21 F.Supp.2d at 1211 (concluding that "42 U.S.C. § 12188 incorporates the administrative exhaustion requirement contained in 42 U.S.C. § 2000a–3(c)").

■ Although this Court has concluded that the interpretations of the plain language of § 12188(a)(1) and § 2000a–3(a) given by other district courts are not determinative, the language of these statutory provisions is key to deciding this dispute. A statute's plain meaning is determined "by looking to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Forest Guardians v. Dombeck,* 131 F.3d 1309, 1312 (9th Cir.1997) (quoting *Seldovia Native Ass'n, Inc. v. Lujan,* 904 F.2d 1335, 1341 (9th Cir.1990)). Thus, while previous courts have only analyzed the first sentence of § 12188(a)(1), this Court's analysis rests on an interpretation of both sentences of this section read in conjunction.

■ The second sentence of § 12188(a)(1) states that nothing in the section requires "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply" with the Title's provisions. 42 U.S.C. § 12188(a)(1). This requirement that an aggrieved party have "actual notice" of a violator's intent not to comply indicates that Congress expected the aggrieved party to notify the violator

of the problem. If the aggrieved party does not provide notice of the violation, the violator cannot provide responsive notice of whether or not it will comply.

Because this second sentence appears to require notice by the aggrieved party to the violator, the question of what Congress considers sufficient notice by the aggrieved party surfaces. To answer this, the Court looks to § 2000a–3(c) because it is already explicitly connected to § 2000a–3(a), the provision explicitly cross-referenced in Title III at § 12188(a)(1). Because Congress has already provided a notice provision linked to § 12188(a)(1) through § 2000a–3(a), this is the provision that the Court considers applicable. Also, because § 2000a–3(c) sets forth notice requirements for parties who like ADA claimants have been harmed by discrimination albeit based on race or gender rather than disability, it is plausible to conclude that Congress intended the same notice requirement to apply to both groups. *See Snyder,* 21 F.Supp.2d at 1210 (indicating that "Congress wished to enact legislation that would give people discriminated against on the basis of disability the same means of redress possessed by people discriminated against on the basis of distinctions that the law already prohibited"). Thus, the notice provision set forth in § 2000a–3(c) and linked to § 2000a–3(a) delineates the steps necessary to satisfy the notice requirement of § 12188(a)(1).

■ A concern arises in concluding that § 2000a–3(c) is applicable to Title III because § 2000a–3(c) does not merely require notice, but also states that "the court may stay proceedings ... pending the termination of state or local enforcement proceedings." From this language it appears that a court could stay an action indefinitely until an aggrieved party exhausted his or her administrative remedies. However, the second sentence of § 12188(a)(1) ad-

---

filed after the Equal Employment Opportunity Commission (EEOC) has dismissed a claim filed by the victim or if after the expiration of

180 days since the date of filing a complaint with the EEOC, the EEOC has failed to file a civil action. *See* 42 U.S.C. § 12117(a) (1990).

dresses this concern. As previously stated, the sentence provides that nothing "in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). This provision indicates that Congress did not intend for a person with a disability to pursue an administrative solution to a violation when that solution would be futile. In accordance with § 12188(a)(1), this Court would only stay a Title III action to allow administrative remedies if a defendant provided evidence that the state authority is taking significant action, or that the defendant is expeditiously and in good faith attempting to comply with ADA Title III.

Further justifying this Court's holding is the fact that the burden imposed on the aggrieved party by the inclusion of § 2000a–3(c) in Title III of the ADA is minimal compared with the potential benefit to violators who wish to comply with these ADA provisions. Because the plaintiff is only required to wait thirty days before filing a private action and will not be required to exhaust administrative remedies, the cost of notice to the plaintiff is marginal. However, the fact that some violators will be given the opportunity to comply in good faith without facing extensive litigation benefits all parties concerned because it effectuates quicker solutions to accessibility problems.

As stated above, Plaintiff has offered evidence confirming that he complied with the notice requirement, although he did so several months after commencing this action. Because Plaintiff is not required to exhaust state administrative proceedings, he is in full compliance with the requirements established in 42 U.S.C. § 12188(a)(1) and § 2000a–3(c). Therefore, Defendants' Motions to Dismiss will be denied.

Accordingly,

**IT IS ORDERED** denying Defendants' Motion to Dismiss. (Dkt.# 2, 7–1).

**IT IS FURTHER ORDERED** vacating the hearing on the motions to dismiss scheduled for July 6, 1999.