Tanner v. Wal-Mart                    CV-99-44-JD    02/08/00

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Mary and Charles Tanner</u>

    v.                                    Civil No. 99-44-JD
                                      Opinion No. 2000 DNH 034
<u>Wal-Mart Stores, Inc.</u>


O R D E R

The plaintiffs, Mary and Charles Tanner, filed suit in
Hillsborough County Superior Court against Wal-Mart Stores, Inc.
("Wal-Mart") after Mary Tanner slipped and fell in the parking
lot of a Wal-Mart store in Hooksett, New Hampshire.[1]  The Tanners
initially sued Wal-Mart for negligence.  After the Tanners added
a claim under Title III of the Americans with Disabilities Act
("ADA"), Wal-Mart removed the action to this court.  Before the
court are the Tanners' motion for partial summary judgment on the
issue of liability for negligence (document no. 11) and Wal-
Mart's motion for partial summary judgment on the ADA claim
(document no. 7), with objections.

<u>Standard of Review</u>

Summary judgment is appropriate when the pleadings,

---

[1]The Tanners also sued Granite State Marketplace and Brix &
Stix Construction Corporation.  The Tanners settled their claims
against those defendants.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is only genuine if there is sufficient evidence to permit a reasonable jury to find for the nonmoving party, while a fact is only material if it has the potential to affect the outcome of the suit under the applicable law. See Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994) (citing NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 32 (1st Cir. 1994)). In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of the claim. See Tardie v. Rehabilitation Hosp., 168 F.3d 538, 541 (1st Cir. 1999). The record evidence is taken in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2

## Background

The Tanners allege that on December 9, 1996, they drove to the Wal-Mart store in Hooksett, New Hampshire. Mrs. Tanner, then age 63, drove their car, which bore a handicap label authorized for Mr. Tanner, then age 65. When they arrived at the store, the Tanners allege there was only one handicapped accessible parking space available, and several shopping carts were in that parking space. Mrs. Tanner pulled up near the parking space and got out of the car to move the shopping carts. After getting out of the car, she noticed that she was standing on ice that had no sand on it. Because she was wearing rubber-soled shoes, she decided to go ahead and move the carts. As she began to do so, she slipped on the ice and fell onto her right knee and her hands, sustaining personal injuries.

The parties agree that on December 9, 1996, the Tanners reported a slip-and-fall accident to a Wal-Mart manager, Sherry Jones. The Tanners told Ms. Jones that Mrs. Tanner had slipped and fallen on ice in the store's parking lot after getting out of her car in order to remove shopping carts from a handicapped accessible parking space. Ms. Jones recorded the complaint on an incident report form and noted that the store had no evidence to prove the event did not happen. The form also notes that Mrs.

3

Tanner was wearing rubber soled shoes and that when she fell she injured her right knee and left thumb.

## Discussion

### I. Wal-Mart's Motion for Partial Summary Judgment

The Tanners have included a claim against Wal-Mart under Title III of the ADA. Wal-Mart moves for summary judgment on four grounds: (1) Mrs. Tanner lacks standing under the ADA; (2) the court lacks subject matter jurisdiction because the Tanners failed to comply with the ADA's notice requirements; (3) the Tanners' claim fails on the merits; and (4) the relief the Tanners request is not available under the ADA.

#### A. Mrs. Tanner's Standing under the ADA

Wal-Mart argues that Mrs. Tanner lacks standing to sue under the ADA because she was not herself disabled within the meaning of the ADA at the time of the accident, nor is she disabled now. Title III of the ADA prohibits public accommodations from discriminating against individuals on the basis of disability. See 42 U.S.C.A. § 12182(a) (West 1995). A private right of action for preventive relief is available to anyone who is subjected to discrimination on the basis of disability. See 42 U.S.C.A. §§ 12188(a)(1), 2000a-3(a). Under Title III,

4

discrimination includes the failure to ensure that "no individual with a disability is excluded" from a place of public accommodation.  <u>See</u> § 12182(b)(2)(A)(iii).  It also includes the failure to make reasonable accommodations in policies, practices, or procedures for "individuals with disabilities."  <u>See</u> § 12182(b)(2)(A)(ii).  Title III of the ADA generally prohibits discrimination against individuals who are themselves disabled.[2] <u>See, e.g.</u>, <u>Abbott v. Bragdon</u>, 107 F.3d 934, 938 (1st Cir. 1997), <u>vacated</u>, 524 U.S. 624 (1998) (stating ADA protects only disabled patients from discrimination in medical office); <u>Bowers v. National Collegiate Athletic Ass'n</u>, 9 F. Supp. 2d 460, 480 (D.N.J. 1998) (stating first element of prima facie case under Title III is establishing plaintiff's disability); <u>Shultz v. Hemet Youth Pony League, Inc.</u>, 943 F. Supp. 1222, 1225 (C.D. Cal. 1996) (same); <u>United States v. Morvant</u>, 898 F. Supp. 1157, 1161 (E.D. La. 1995) (same); <u>Mayberry v. Von Valtier</u>, 843 F. Supp. 1160, 1166 (E.D. Mich. 1994) (same).

The Tanners do not dispute that Mrs. Tanner was not, and is not, disabled.  They argue that Mr. Tanner was effectively denied

---

[2]Title III does provide for a right of action in the specific situation where an individual is discriminated against because of the known disability of a person with whom he is known to be associated.  <u>See</u> § 12182(b)(1)(E).  The Tanners do not argue that this section affords standing to Mrs. Tanner.

access to Wal-Mart because he could not drive himself, and his driver, Mrs. Tanner, was unreasonably imperiled by Wal-Mart's failure to remove the shopping carts. The court concludes that Mrs. Tanner is not within the class of persons protected by Title III, and she has no standing to sue under Title III of the ADA on the basis of her disabled husband allegedly being denied access to the store.

B.  Notice Requirement

Wal-Mart contends that the court lacks subject matter jurisdiction because the Tanners failed to comply with the ADA's notice requirement. The court must first decide whether Title III of the ADA imposes such a notice requirement.

Title III of the ADA provides:

> The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter . . . Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

§ 12188(a)(1). Section 2000a-3(a) of the Civil Rights Act, which § 12188(a)(1) incorporates by specific reference, provides a right of action for preventive relief. Wal-Mart contends that §

2000a-3(c) also applies to Title III of the ADA. Section 2000a-3(c) requires victims of discrimination to file written notice with the appropriate state authority at least thirty days before bringing suit under § 2000a-3(a), in states where state law authorizes a state authority to seek relief for discrimination.[3] Wal-Mart asserts that the Tanners failed to comply with this notice requirement, and therefore this court lacks jurisdiction. See Stearnes v. Baur's Opera House, Inc., 3 F.3d 1142, 1144 (7th Cir. 1993) (stating § 2000a-3(c) requirements are jurisdictional).

Federal district courts are split on the issue of whether § 2000a-3(c) applies to Title III of the ADA, with apparently no circuit courts having ruled on the matter. Several district courts have decided that because the ADA's language refers specifically to § 2000a-3(a), and neither mentions § 2000a-3(c) nor refers to § 2000a-3 generally, Congress must have intended for only § 2000a-3(a) to be incorporated into Title III of the ADA. See Moyer v. Showboat Casino Hotel, 56 F. Supp. 2d 498, 501 (D.N.J. 1999); Guzman v. Denny's, Inc., 40 F. Supp. 2d 930, 934-35 (S.D. Ohio 1999); Botosan v. Fitzhugh, 13 F. Supp. 2d 1047,

_____

[3]Wal-Mart argues that the New Hampshire Commission for Human Rights is the appropriate authority in this case, pursuant to New Hampshire's Law Against Discrimination. See N.H. Rev. Stat. Ann. ("RSA") § 354-A:17 (Supp. 1998).

7

1050 (S.D. Cal. 1998); <u>Bercovitch v. Baldwin Sch.</u>, 964 F. Supp. 597, 605 (D.P.R. 1997), <u>rev'd on other grounds</u>, 133 F.3d 141 (1st Cir. 1998). Other courts have held that Title III of the ADA does incorporate § 2000a-3(c), relying on the statutory language and legislative history. See <u>Burkhart v. Asean Shopping Ctr.</u>, 55 F. Supp. 2d 1013, 1018 (D. Ariz. 1999); <u>Snyder v. San Diego Flowers</u>, 21 F. Supp. 2d 1207, 1210 (S.D. Cal. 1998); <u>Mayes v. Allison</u>, 983 F. Supp. 923, 925 (D. Nev. 1997).[4]

Under traditional rules of statutory interpretation, the court must first consider the plain meaning of the statutory language. If the meaning is ambiguous, only then should the court proceed to examine the relevant legislative history. See <u>Bercovitch</u>, 133 F.3d at 149 (citing <u>Caminetti v. United States</u>, 242 U.S. 470, 485 (1917)). The language of § 12188(a)(1) refers specifically to § 2000a-3(a). If Congress had intended for the

---

[4]The court recognizes that Judge Devine in this district applied the notice requirement of § 2000a-3(c) to Title III of the ADA without explicitly addressing its incorporation into Title III. See <u>Daigle v. Friendly Ice Cream Corp.</u>, 957 F. Supp. 8, 9 (D.N.H. 1997). However, Judge Devine reconsidered this decision in <u>Doukas v. Metropolitan Life Ins. Co.</u>, 1997 WL 833134, at *3 (D.N.H. 1997), where he interpreted the plain language of Title III to mean that § 2000a-3(c) does not apply to Title III. See <u>Doukas</u>, 1997 WL 833134, at *3 n.2. The court considers the reasoning in <u>Doukas</u> to be more persuasive than the decision in <u>Daigle</u>.

notice requirement of § 2000a-3(c) to apply to Title III of the ADA, Congress could have made explicit reference to that section, or it could have referred to § 2000a-3 as a whole. Reading the statute to include all of § 2000a-3 would render the specific designation of § 2000a-3(a) superfluous. The court is guided by the doctrine of statutory interpretation of <u>expressio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u> -- when a statute enumerates specific subjects, the court can assume that other subjects were omitted deliberately. <u>See, e.g.</u>, <u>Moyer</u>, 56 F. Supp. 2d at 502; <u>Guzman</u>, 40 F. Supp. 2d at 934-35. Therefore, considering the first sentence of § 12188(a)(1), it appears that Congress deliberately chose not to incorporate § 2000a-3(c) into Title III of the ADA.

The <u>Burkhart</u> case, which held that § 2000a-3(c) does apply to Title III, relied on the plain language of the second sentence of § 12188(a)(1), which states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." § 12188(a)(1). The <u>Burkhart</u> court interpreted this language to mean that Congress intended for the aggrieved party to notify the violator of the discriminatory action before filing suit. <u>See</u> <u>Burkhart</u>, 55 F. Supp. 2d at 1018. That court held that notice under § 2000a-3(c) was the proper

9

requirement to apply to Title III plaintiffs.

This court finds the reasoning in an opinion criticizing Burkhart to be more persuasive. See Sharp v. Waterfront Restaurants, 1999 WL 1095486 (S.D. Cal. Aug. 2, 1999). The "futile gesture" language allows a plaintiff to bring suit without having to go through the motion of being denied access to a place of public accommodation, if the plaintiff has actual notice that the place of public accommodation intends to discriminate against people with disabilities. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 365-66 (1977) (holding plaintiff can bring Title VII action for employment discrimination without actually seeking employment from defendant if doing so would be futile gesture). Therefore, if a place of public accommodation displays a sign indicating that it denies entry to people with disabilities, a plaintiff may bring suit without trying to enter the premises himself.[5]  See id.

---

[5]Any ambiguity in this language is clarified by the legislative history of Title III. "[A] person does not have to engage in a 'futile gesture' if the person has notice that an entity covered under [T]itle III does not intend to comply with its provisions. For example, if a theatre has turned away six people with cerebral palsy and has indicated that it has a policy of turning away such individuals, a person with cerebral palsy can bring suit without first subjecting himself or herself to the humiliation of being turned away by the theatre." 136 Cong. Rec. E1920 (daily ed. May 22, 1990) (statement of Rep. Hoyer),

10

The court interprets § 12188(a)(1) to mean that the notice requirement of § 2000a-3(c) does not apply to Title III of the ADA. Therefore, Wal-Mart has not shown that the court lacks subject matter jurisdiction to consider the merits of the claim.

C.   Merits of ADA Claim

The Tanners allege that Wal-Mart is liable under Title III of the ADA because the handicapped parking spaces at the Hooksett store were routinely obstructed by shopping carts before, on the date of, and after Mrs. Tanner's accident, and because the parking space in question was icy and slippery on the date of the accident. The Tanners claim that Wal-Mart is responsible for the shopping carts and does not have adequate procedures for monitoring and removing shopping carts from handicapped parking spaces.

The Tanners allege that Wal-Mart has routinely allowed handicapped accessible parking spaces to be blocked by shopping carts from September 1, 1995, until the Tanners filed their charge with the New Hampshire Commission for Human Rights on December 4, 1998. However, a careful review of the record presented to the court on summary judgment yields no evidence to

_____

available in 1990 WL 80290.

11

support this allegation.  The specific facts sworn to by the plaintiffs and otherwise presented in the record refer to the circumstances surrounding Mrs. Tanner's accident on December 9, 1996.  Therefore, in the absence of sufficient evidence to support allegations of other violations, the Tanners' ADA claim appears to rest on the events of December 9, 1996.

Title III of the ADA requires places of public accommodation to remove architectural barriers to provide reasonable access to people with disabilities.  See § 12182(b)(2)(A)(iv).  Creating designated handicapped accessible parking spaces is one way public accommodations typically remove barriers to access.  See 28 C.F.R. § 36.304(b)(18); id., pt. 36, App. A § 4.1.2 (1999).  Public accommodations are required to maintain those features of their facilities that need to be readily accessible to people with disabilities.  See 28 C.F.R. § 36.211(a).  Isolated or temporary interruptions in access due to maintenance or repairs are not prohibited.  See § 36.211(b).  Regular use of an accessible route for storage of supplies would violate Title III, but an isolated instance of placement of an object in an accessible route is not a violation if the object is promptly removed.  See United States Department of Justice, Civil Rights Division, The Americans with Disabilities Act: Title III Technical Assistance Manual § III-3.7000 (1993); see also

12

Bragdon, 524 U.S. at 646 (citing Technical Assistance Manual and noting Justice Department's views entitled to deference).

Wal-Mart relies on a case in which the Colorado Court of Appeals held that "an isolated instance of negligence regarding the failure to maintain access routes, without more, is not covered by the ADA." Pack v. Arkansas Valley Correctional Facility, 894 P.2d 34, 39 (Colo. Ct. App. 1995). That case concerned a failure to remove ice and snow from a handicapped parking zone. See id. at 35. While Pack is not binding authority on this court, the court finds its reasoning persuasive in light of the Justice Department's guidelines. Title III's purpose is to ensure that people with disabilities have access to public facilities, not to provide a remedy for specific acts of negligence. See 42 U.S.C.A. § 12182. Based on the facts before the court on summary judgment, the isolated incident on December 9, 1996, of failure to remove shopping carts and failure to properly remove ice and snow from the handicapped parking space does not constitute a Title III violation. In making this decision, the court does not decide whether a general practice of failing to remove ice or snow or shopping carts from a handicapped parking area would violate Title III.

Because the court finds that Wal-Mart is entitled to summary judgment on the Tanners' ADA claim, the court need not address

13

the damages issue.

## Conclusion

For the foregoing reasons, the defendant's motion for partial summary judgment is granted (document no. 7). Judgment for the defendant shall be entered on the federal claims under the ADA. As the Tanners' remaining negligence claims against Wal-Mart are based on state law, the court declines to retain jurisdiction over those claims and remands the action to state court. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). This case shall be remanded to the New Hampshire Superior Court, Hillsborough County. The court need not address the Tanners' motion for partial summary judgment on liability for negligence pending before this court (document no. 11) and said motion is considered moot insofar as this court is concerned.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

February 8, 2000

cc: Christopher A. Bandazian, Esquire
    Alexander J. Walker, Esquire

15