David IVERSON, Individually and Michael Muehe, Individually

v.

COMSAGE, INC. d/b/a Howard Johnson's

No. CIV. A. 00–10793–RGS.

United States District Court, D. Massachusetts.

Feb. 20, 2001.

Mark Orlove, Boston, MA, for plaintiffs.

Christopher A. Kenney, Margaret H. Paget, David A. Brown, Sherin and Lodgen, Boston, MA, for defendant.

*MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

■ The Amended Complaint alleges that defendant Comsage, Inc. (Comsage),

has failed to bring its Howard Johnson's Hotel on Commonwealth Avenue in Boston into full compliance with Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq.* Comsage seeks dismissal of the Amended Complaint, arguing that the court lacks subject matter jurisdiction because of plaintiffs' failure to give notice of the alleged violations to the Massachusetts Architectural Access Board (MAAB) before filing suit, as required by 42 U.S.C. §§ 2000a–3(c) and 12188(a)(1). In the alternative, Comsage seeks summary judgment, contending that plaintiffs have produced no competent evidence disputing its showing that any actionable violations of Title III on the Hotel premises have been remedied.[1]

*BACKGROUND*

Comsage owns and operates a Howard Johnson's Hotel at 557 Commonwealth Avenue in Boston. The Hotel was constructed in 1961 and opened to guests in 1962. After the enactment of the ADA, Comsage renovated four guest rooms to make them handicap accessible, installed elevators, reconfigured the Hotel's public bathrooms, built a wheelchair ramp at the Hotel entrance, and put in handicapped parking spaces. These historical alterations are described in the report of plaintiff's ADA consultant, William Norkunas, and the affidavit of Ronald Doucette, Comsage's Director of Capital Projects.[2]

Plaintiffs filed this action on April 25, 2000, alleging certain violations by Comsage of ADA Title III. On July 17, 2000, at the court's suggestion and with Comsage's participation, Norkunas inspected the Hotel. During the course of the inspection, Norkunas identified a number of additional alleged ADA violations, which were incorporated in an Amended Complaint filed on October 26, 2000. After Norkunas's initial inspection (and prior to the filing of the Amended Complaint), Comsage made alterations to the Hotel's entrance, lobby, parking area, guest rooms and public areas. These included the: (1) relocation, enlargement and the installation of new signage for handicapped parking spaces; (2) installation of a curb-cut ramp near the Hotel's front entrance; (3) relocation of the signage in public restrooms and the repair of self-closing stall hinges; (4) installation of paddle handles in women's restrooms; (5) installation of a lowered check-in counter; (6) lowering of peepholes and clothing racks in handicap accessible guest rooms; (7) increased clearance around handicap guest beds; and (8) installation of Braille signage at the elevators. Doucette Aff., at ¶¶ 8–9. [Docket # 13]; Doucette Supp. Aff. I, at ¶ 2 [Docket # 14]. After the court allowed a motion to strike an affidavit submitted by Norkunas challenging the extent of the most recent alterations, which admittedly was not based on personal knowledge, Norkunas submitted a supplemental affidavit describing an "informal" inspection he had made of the Hotel. The supplemental affidavit states that the dimensions of the Hotel's handicap parking spaces and the positioning of signage and paper towel dispensers in the men's restroom in the Hotel lobby do not comply with Title III regulations. Norkunas Supp. Aff., at ¶¶ 14–20. [Docket # 29]. Norkunas's supplemental affidavit triggered a reply affidavit from Doucette, accompanied by supporting photographs, attesting that the violations observed during Norkunas's most recent inspection had been corrected. Doucette Supp. Aff. II, at ¶¶ 5—8. [Docket # 32]. The parties agree that there is no wheelchair access to the Hotel's eighth floor swimming pool. (The only access is by an interior stairway). However, according to

---

1. Title III authorizes equitable relief, but not money damages. Hence, absent a showing of an existing violation, there is no relief to which plaintiffs would be entitled.

2. The Norkunas report is attached as Exhibit A to the affidavit of attorney Margaret Paget, submitted in support of defendant's motion for summary judgment. [Docket # 15]. The pertinent Doucette affidavit was filed on September 1, 2000. [Docket # 13].

Doucette, since January 26, 1992 (the effective date of the ADA), the only physical alteration undertaken on the eighth floor was the installation of a kitchen serving the pool area, at a cost to Comsage of approximately $35,000. Doucette Aff., at ¶ 6. [Docket # 13]. The estimated cost of installing an elevator between the seventh and eighth floors is a minimum of $15,000. Id. at ¶ 7.[3]

## DISCUSSION

### Subject Matter Jurisdiction

■ Comsage contends that the plaintiffs' failure to give notice of the alleged ADA violations to the MAAB before filing suit divests the court of subject matter jurisdiction. An understanding of Comsage's argument requires an explanation of the interplay between Title III of the ADA and the Civil Rights Act of 1964. According to Title III:

"[t]he remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination of the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

42 U.S.C. § 12188(a). Section 2000a–3(a) states:

[w]henever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief, including an applica-tion for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

Section 2000a–3(c) provides that:

[i]n the case of an alleged act or practice prohibited by this subchapter which occurs in a State ... which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

■ In 1967, Massachusetts created the MAAB "to make ... rules and regulations designed to make public buildings accessible to, functional for, and safe for use by physically handicapped persons." M.G.L. c. 22, § 13A. The MAAB has broad enforcement powers. See *Iodice v. Architectural Access Board*, 424 Mass. 370, 373–374, 676 N.E.2d 1130 (1997).

Comsage maintains that Congress, consistent with its other civil rights enactments, intended to incorporate the notice

---

**3.** According to 28 C.F.R. § 36.403(f), "[a]lterations made to provide an accessible path of travel to the altered area will be deemed disproportionate to the overall alteration when the cost exceeds 20% of the cost of the alteration to the primary function area."

provision of subsection 2000a–3(c) in Title III of the ADA. This is true, Comsage argues, because the clear intent of the ADA, as amply corroborated by its legislative history, is to promote voluntary compliance with Title III, a purpose served by giving violators notice and an opportunity to comply without the burden of unnecessary litigation. This argument has struck a responsive chord with a number (although by no means a majority) of district courts. See, e.g., *Burkhart v. Asean Shopping Center, Inc.*, 55 F.Supp.2d 1013, 1019 (D.Ariz.1999).[4] However, in *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir.2000), the only Appeals Court to decide the issue to date rejected Comsage's argument.

> The plain language of § 12188(a)(1) is clear and unambiguous, and it can be understood without reference to any other statutory provision. Section 12188(a)(1) is devoid of any reference to § 2000a–3(c). Yet, Congress explicitly incorporated subsection (a) of § 2000a–3 into § 12188(a)(1). The incorporation of one statutory provision to the exclusion of another must be presumed intentional under the statutory canon of *expressio unius* [*est exclusio alterius* ]. Surely, "Congress obviously knew how to adopt the provisions of Title VII because it expressly adopted subsection (a) ... [and it is] unlikely that Congress would absentmindedly forget to adopt a provision that appears a mere two paragraphs below the subsection it adopted."

■ There are good reasons for wishing that Congress had read a notice provision into Title III of the ADA. The most salient of these was summarized by Judge Brewster in his now superseded (by *Botosan* ) opinion in *Snyder v. San Diego Flowers*, 21 F.Supp.2d 1207, 1210–1211 (S.D.Cal. 1998).

Requiring potential plaintiffs to notify offenders and provide an opportunity to remediate before filing suit is likely to solve access problems more efficiently than allowing all violators to be dragged into litigation regardless of their willingness to comply voluntarily with the ADA once informed if its infractions. The goals of the ADA do not include creating an incentive for attorneys to seek statutory fees by laying traps for those who are ignorant of the law. The Court believes that the purposes of the ADA are best served by reserving private enforcement actions for knowing violators who refuse to comply without an injunction.

This case is a good example. Comsage is a pliant defendant eager to bring its facilities into ADA compliance without the expense and embarrassment of litigation. Plaintiffs do not seriously question Comsage's good faith. Rather the case is stalled on verification issues involving excrutiatingly dense factual determinations (whether, for example, the Hotel's handicapped parking places are laid out according to precise regulatory requirements, whether signage in the public restrooms is hung at the appropriate heights, and so on). This raises a second point. A judicial forum is not well-equipped to resolve issues of this kind, short of dispatching a judge with tape measure in hand to conduct his or her own inspection. A preferable alternative would be to enlist an agency like the MAAB with the regulatory experience and engineering expertise to make an initial determination whether compliance had been achieved or whether further remedial measures are necessary. This could be accomplished by requiring a plaintiff to give notice and seek administrative remedies from the MAAB before turning to a court for injunctive relief. The point of notice is not to interpose procedural hurdles between deserving

---

4. District courts in the First Circuit are divided on the notice issue. Compare *Daigle v. Friendly Ice Cream Corp.*, 957 F.Supp. 8 (D.N.H.1997), with *Bercovitch v. Baldwin School*, 964 F.Supp. 597 (D.P.R.1997), rev'd on other grounds, 133 F.3d 141 (1st Cir. 1998).

plaintiffs and their eventual day in court, but to eliminate unnecessary litigation by promoting conciliation. See *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). One would think that the prospects of achieving voluntary compliance with the anti-discrimination laws would be especially good in the Title III context, where the equities are plain, the purpose of the law is clear, and the incentives for a violator to bring itself within the strictures of the law are obvious. It seems odd that we require plaintiffs in employment cases who believe that they are the victims of purposeful discrimination to give notice to their employers before bringing suit, while relieving victims of passive handicap discrimination of the same obligation. See *Bonilla v. Muebles J.J. Alvarez*, 194 F.3d 275, 278 (1st Cir.1999) (Title I ADA plaintiffs must as a jurisdictional prerequisite comply with the notice provisions of Title VII). Nonetheless, 42 U.S.C. § 12188(a)(1) says what it says, and it is not the office of a court to rewrite a law enacted by Congress that is plain on its face, even if a judicial amendment might better serve the law's stated purpose.[5]

*The Remaining ADA Violations*

Comsage argues that it has made every alteration requested by plaintiffs except for the installation of an elevator between the seventh and eighth floors of the Hotel to provide wheelchair access to the swimming pool. Comsage contends that it is not required to install an elevator because the cost of doing so is deemed disproportionately high under ADA regulations. Comsage may well be correct. Plaintiffs at least admit that possibility by suggesting "that there are other [unspecified] alternatives to installing an elevator to allow access to the pool by disabled persons." Plaintiffs' Memorandum, at 8 [Docket # 18]. Nonetheless, plaintiffs maintain that Title III violations remain, and that Comsage's attempts at remediation have been less than perfect. Comsage responds that plaintiffs' information is out of date. Rather than continuing the war by affidavit by which the parties have attempted to resolve this issue, counsel would better serve the interests of all involved by agreeing on a mechanism by which Comsage's claims can be verified. As suggested at the hearing, this might be done by an evaluation by an independent expert, or by the MAAB.

*ORDER*

For the foregoing reasons, the motion to dismiss for want of subject matter jurisdiction is *DENIED*. A decision on defendant's motion for summary judgment will be *DEFERRED*, pending the parties' further report to the court as to the specific compliance issues, if any, that remain outstanding. The report shall be due within forty-five (45) days of this date.

SO ORDERED.

---

5. Several of the courts that have found all of the 1964 Civil Rights Act's remedies and procedures to be incorporated into the ADA relied in part on the fact that the Department of Justice's original Title III implementing regulations referenced the attorneys' fee provision of § 2000a–3(b), as well as the relief provision, § 2000a–3(a), while omitting § 2000a–3(c). See, e.g., *Mayes v. Allison*, 983 F.Supp. 923, 925 (D.Nev.1997). As Comsage phrases it, "if the Court concludes that paragraph 3(c) is not incorporated into Title III, then it should draw the same conclusion for paragraph 3(b) [under the canon of *expressio unius* ], governing attorneys' fees." Defendant's Memorandum, at 8–9 [Docket # 12]. This argument, however, ignores 42 U.S.C. § 12205 which provides independent statutory authority for awarding attorneys' fees under Title III.